HENKEL, APPELLEE, *v*. EDUCATIONAL RESEARCH COUNCIL OF AMERICA, APPELLANT.

[Cite as Henkel v. Educational Research Council (1976), 45 Ohio St. 2d 249.]

(No. 75-524—Decided March 17, 1976.)

250

Mr. Dale D. Powers, for appellee.

Messrs. Squire, Sanders & Dempsey, Mr. James P. Murphy and Mr. Thomas J. Baechle, for appellant.

PAUL W. BROWN, J. The Court of Appeals, in affirming the trial court's judgment for appellee, stated:

"* * * ordinarily, a hiring for a specified sum per year imports a hiring for a year."

Relevant Ohio case law, cited by the parties, does not support that conclusion. Nor do the decisions of courts in other states. The modern rule is that in the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party.

In *Bascom* v. *Shillito* (1882), 37 Ohio St. 431, the plaintiff was first employed on a monthly basis at a salary of $75 per month, and later, at $1,100 per year, effective March 1, 1875. The plaintiff testified that he applied for the increase in salary, and wanted his situation made more permanent. On July 31, 1875 he was discharged.

The single issue presented upon appeal was the refusal of the trial court to charge the jury as requested by the plaintiff. The requested charge was ruled proper by this court, and reflected in the syllabus:

"Where one rendering service for another under a monthly employment, says to his employer that he desires to have his employment made more permanent, and thereupon a specified amount per year is agreed upon, payable in semi-monthly installments, a hiring for a year may be inferred. Express words that the employment should continue for a year are not essential."

Three factors coalesced in the *Bascom* case: the plaintiff's employment on a month-by-month basis, with compensation paid monthly; a desire by the plaintiff that his employment be made more permanent; and, thereafter, an oral agreement providing increased compensation at a specified sum per year.

The facts in *Bascom*, and the syllabus based thereon, do not support the proposition advanced by the Court of Appeals. *Bascom* involved application to an oral contract of the principle that employment contracts which are silent as to the term of employment are to be interpreted in light of all relevant circumstances, including "proof of the periods at which payments were to be made, the character of the employment, custom, the course of dealing between the

parties, or other fact which may throw light upon the question." *Bascom*, at pages 433-434. The court in *Bascom* quoted with approval portions of the trial court's charge to the jury consonant with that principle, including the following:

"'* * * [t]he issue presented was purely one of fact; that it was for the jury to say whether that which took place between the parties, as detailed by the evidence, constituted a hiring for a year; that it was a question of intention, to be determined with reference to all the circumstances and facts of the case; that the jury should consider the previous relationship of the parties, all that was said between Colclesser and plaintiff at each interview, and determine from these and all the circumstances whether it was the intention of the parties that there should be a yearly hiring.'"

And further:

"'* * * [a] contract for a year will not be implied unless it was definitely agreed upon between the parties. * * * [I]f the jury find that nothing was said as to the duration of the service, the defendants were entitled to dissolve the relationship between the plaintiff and defendants at the end of any month.'"

Our decision in *Bascom* was subsequently cited in *Kelly* v. *Carthage Wheel Co.* (1900), 62 Ohio St. 598. There, the plaintiff, Kelly, was a practical wheelmaker, and the defendant, a corporation, was the owner of a plant for the manufacture of buggy and wagon wheels. Kelly offered his services to the defendant by letter, stating, in part:

"In making this agreement or contract, I will want you to guarantee me $3,000.00 per year, a proportion of this amount to be paid me each pay day and a settlement to be made at the end of each year, and if I should make more than the above guarantee, the difference be paid me at the end of each year when settlement is made."

Kelly's offer was orally accepted by the defendant prior to May 1, 1892, upon which date Kelly entered the defendant's service. Kelly remained so employed for 18 months, until November 3, 1893, when he was discharged.

Kelly sued, alleging a wrongful discharge prior to the expiration of his contract of employment.

This court reversed a judgment for the defendant, declaring in paragraph one of the syllabus:

"In order to constitute a contract of employment for a year, it is not essential that the agreement shall contain express words of employment for that specific period. The intention of the parties in this respect, as in all others, must be gathered from the whole instrument, or agreement."

Paragraph three added:

"Where, under such contract, the employee is continued in the same service of the employer after the expiration of the year without any new or different arrangement, a contract for another year, upon the same terms, arises by implication of law; and when, before the end of that year the employee is discharged without justifiable cause, a right of action accrues to him against the employer for breach of the contract."

At pages 610-612, the court expounded upon these statements of law:

"We * * * are disposed to adopt the construction of the contract advocated by the plaintiff, which, on the trial was, and here is, that under it his employment was for at least one year; and that, having continued in such employment after the end of the first year without any new arrangement, a contract arose for the second year upon the same terms. There seems to be a want of harmony in the decisions in regard to the effect of a contract of hiring at a specified rate of compensation per year, some holding that such stipulation imports a hiring for a year, and others the opposite. We find it unnecessary here to consider that question. It is settled that express words that the contract shall continue for a year are not essential to constitute an employment for that period. *Bascom* v. *Shillito*, 37 Ohio St. 431. And, in the interpretation of contracts of this kind, as well as of all others, none of their provisions should be ignored or overlooked, that serve to indicate the intention of the parties. The language of the contract in question, by which the defendant agreed to guarantee to the plaintiff

the sum of $3,000.00 per year, is not an agreement to insure a compensation at a specified rate per year, but is an undertaking that the plaintiff shall receive the gross sum of $3,000.00 for a year; and the further language that a portion of this sum shall be paid to the plaintiff 'each pay day and a settlement to be made at the end of each year,' and that if the plaintiff should make more than the sum so guaranteed the difference should be paid to him 'at the end of each year,' plainly imports that the settlements referred to should embrace the transactions of an entire year, through which the employment was to extend, and amounts to a contract for such employment during that year. * * *

"It is generally accepted as an established rule that, where there is a contract of hiring for a year and at the expiration of that time the employee is continued in the same service of the employer without any new or different arrangement, a contract for another year, upon the same terms and conditions, arises by implication of law."

Our decision in *Kelly* does not resolve the issue presented here, whether a hiring at a specified sum per year constitutes a hiring for a year. The court merely held that because Kelly had initially been hired for one year, absent a new arrangement at the end of that year, he was rehired upon identical terms for a second year. To reach that conclusion, the court considered all relevant facts and circumstances, and carefully scrutinized the terms of the written offer. We view that approach as sound.

In the 76 years since our decision in *Kelly,* courts in other states have continued to reject the proposition embodied in the opinion of the Court of Appeals, *supra.* As early as 1895, the New York Court of Appeals held that:

" '* * * [A] general or indefinite hiring is, prima facie[,] a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. * * *' " *Martin* v. *New York Life Ins. Co.* (1895), 148 N. Y. 117, 121, 42 N. E. 416.

More recently, in *Forrer* v. *Sears, Roebuck & Co.* (1967), 36 Wis. 2d 388, 393, 153 N. W. 2d 587, the Supreme Court of Wisconsin stated:

"Generally speaking, a contract for permanent employment, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages. Annots. (1924), 35 A. L. R. 1432, (1941) 135 A. L. R. 646. The same is true where the contract of hiring specifies no term of duration but fixes compensation at a certain amount per day, week, or month. Annots. (1917), 11 A. L. R. 469, (1934) 100 A. L. R. 834. Although not absolute, the above stated rule appears to be in the nature of a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other. The presumption is grounded on a policy that it would otherwise be unreasonable for a man to bind himself permanently to a position, thus eliminating the possibility of later improving that position. Moreover, a contract of permanent employment is by its very nature indefinite, and thus any effort to interpret the duration of the contract and assess the amount of damages becomes difficult. Wisconsin has aligned itself with the overwhelming majority of jurisdictions that have adopted the above stated principles. * * *"

See, also, *Edwards* v. *Seaboard & Roanoke R. R. Co.* (1897), 121 N. C. 490, 28 S. E. 137; *Hindle* v. *Morrison Steel Co.* (1966), 92 N. J. Super, 75, 223 A. 2d 193; *Miller* v. *Community Discount Centers* (1967), 83 Ill. App. 2d 439, 228 N. E. 2d 113; *Thomas* v. *Ballou-Latimer Drug Co.* (1968), 92 Idaho 337, 442 P. 2d 747; *Thoma* v. *Wolverine World Wide* (W. D. Pa. 1972), 352 F. Supp. 580; and Annotation, 161 A. L. R. 706, 712.

The rule is stated by 2 Restatement of Agency 2d 339, Section 442:

"Unless otherwise agreed, mutual promises by princi-

pal and agent to employ and to serve create obligations to employ and serve. which are terminable upon notice by either party; if neither party terminates the employment, it may terminate by lapse of time or by supervening events.".

.: Comment *b* to that section adds:

"*Salary proportioned to time units.* The fact that a servant or other agent is employed under a contract which merely specifies a salary proportionate to units of time which are commonly used for the purposes of accounting or payment, such as a month or a year, does not, of itself, indicate that the parties have agreed that the employment is to continue for the stated unit of time. Such a specification merely indicates the rate at which the salary is earned or is to be paid, and either party is privileged to terminate the relationship at any time unless further facts exist. However, the fact that payment is to be made in accordance with a time unit is evidence, in connection with other relevant facts, indicating that the agreement is for such unit. Thus, an agreement for the period of time mentioned as that for payment, or as the basis for payment, is indicated if one party pays consideration aside from his promise to employ or to serve; or if the agency is an important one and of a kind such that a temporary appointment would not be likely to be made; or if, as the principal has notice, the employee has made an important change in his general relations in order to accept the position, such as the removal of himself and his things to a new place; or if he has given up a position of some value in order to enter the employment. In the absence of other facts, a custom in the business of which the parties should know, or a usage by the principal as to periods of employment of which the agent should know, is controlling.

"In such situations, however, even if other elements would of themselves indicate an employment for a fixed period, if the facts also indicate that the contract is made with reference to a particular job of the principal or for an emergency, there is an inference that the contract is for employment only during such job or emergency."

The foregoing is a clear reiteration of the principles applied by this court in *Bascom* and *Kelly*. Those principles must now be applied to the facts of this case.

Appellee is a data processing specialist. She was first employed by the Research Council in April of 1965, pursuant to an oral agreement with no terms of employment specified. She was apparently paid every two weeks at the rate of $700 per month. She was so employed until her resignation in August 1968.

Appellee was reemployed by the Research Council for the period October 14 to November 15, 1968, and assigned to a specific project. Appellee was paid $200 per week. When appellee completed the project, other temporary projects were found for her, such that she remained employed by the Research Council through the winter of 1968-1969.

Appellee testified that she became dissatisfied with the uncertain nature of her employment status, by her transfer from project to project, and considered resigning. To thwart this possibility, the Research Council offered appellee employment in the Science Department, at a $400 annual increase in salary. The Research Council's offer was embodied in a letter of March 11, 1969, *supra*, and accepted by appellee six days thereafter.

Appellee worked pursuant to the contract from April 1, 1969, through June 30, 1969, when she was discharged. She was paid twice a month at an annual rate of $10,800. She received one month's severance pay.

At trial, appellee testified:

"It [the offer of March 11, 1969] indicated to me—it was my firm belief that I would now be protected in a more stable, or if you will, permanent arrangement. Someone will not come on Monday and say 'today we have no more money, you are not needed anymore.'"

In appellee's opinion, the new arrangement "would continue for a year or even more."

Upon cross-examination, appellee was asked:

"Q. Allright. Now plaintiff's Exhibit 1 contains a phrase, in addition to some others. I'll just quote the lan-

guage that I want—'effective April 1, 1969 at an annual salary of $10,800.' Do you agree with me so far? .

"A. I do.

"Q. Now, Dr. Andrews, when he gave you this letter did not say, 'Mrs. Henkel, this is a year's contract, or a contract for a year?'

"A. Not in this terminology, but I did bring my question to Dr. Andrews, 'how are we budgeted? Does this department that I'm going to work for on a permanent basis have a budget?' Yes we do.

"Q. Now you are going beyond my question. If I can stop you for just a second. The fact that he gave you the letter did not say to you, 'Mrs. Henkel, I offer you, on behalf of Educational Research Council, a contract for a year.'

"A. No he did not.

"Q. Or words to that effect?

"A. No he did not.

"Q. He gave you a letter and said, 'Mrs. Henkel, I would like to read this letter and give you a written response.'

"A. Yes.

"Q. And it was your hope that this would last indefinitely, up to the present time."

"* * *

"A. Yes.

"Q. You hoped you had found a lifetime job there, for all practical purposes. I assume for the services you thought you had a lifetime job. Most of us don't plan that far ahead, into the indefinite future. At least, you thought you had employment that was permanent.

"Allright. Now did anyone since then—Dr. Andrews nor did anyone else at the Council say to you, 'Mrs. Henkel, we're offering you a contract for a year effective April 1, 1969 until March 31, 1970?'

"A. Not in such terms, however, a contract for the Science Department was discussed at this time. It was indicated that the department I would now be a member of would be working on an approved budget from April 1st.

"Q. But you yourself did not have anyone from the Council say to you, 'Mrs. Henkel, we're offering you a year's contract?'

"A. No, I did not."

The deposition of Dr. Ted F. Andrews was read into the record. Andrews testified that employment at the Research Council "was a continuing employment. There was no specific date. All of my employees, as I recall received one letter of employment and that then was continued for one, two, three years depending on how long they stayed on the staff."

Andrews testified that he employed appellee "as any other staff member, as a permanent employee as long as the program was going to run."

Andrews was asked:

"Q. You mentioned that you discussed with Mrs. Henkel her responsibility and salary prior to sending her the March 11th letter, is that correct?

"A. Correct.

"Q. I take it from the way you characterized that in terms of responsibility and salary you also did not discuss with her a particular term of employment.

"A. This is correct, it was understood by the employees that we hired them to work on programs and they would work on a program and when the program was terminated, either we would move them to another program or some other area within the Council."

Dr. George Baird, president and executive director of the Research Council, testified that the Research Council "do[es] not have annual contracts. * * * Our income is substantially dependent on grants and contributions from foundations and other sources beyond the project earnings of our Council; and consequently, we are always hoping to get the amounts of money that we want. In fact actually, I just got to say as business parties recognize that you don't always get the things you wish to get; and consequently, we have not felt that we should be able to, as the board, expect more than is at least hopefully reasonable. Not always do we get what we want." Baird stated, "I guess

that's why we have to be very cautious about why we have not extended term contracts—that is, exude the irrevocable money we might not have."

Baird testified that Dr. Andrews had no independent authority to hire personnel. He was asked:

"Q. Well who gives Dr. Andrews authority to hire people for his department?

"A. I do.

"Q. And how is this system of hiring set up? What is your procedure for hiring people—who does that work?

"A. He may hire no one at an annual salary without permission of my office or in my absence, at times, assigned to the Assistant Director.

"Q. All right, now you say that he may not hire anyone at an annual salary without your permission. I take it—does he have some short time, part time flexibility?

"A. That is very limited. Only to the extent of a week or two, replacing a secretary who might be sick; when we got an urgent amount of work that needed to be done and that's done with the agreement and the permission of our Treasurer.

"Q. But any other employment would have to be done by you?

"A. Yes sir.

"Q. And in 1969, what authority did you give Dr. Andrews to employ people for a term of one year?

"A. None.

"Q. Have you ever, or did you ever, during his employment give Dr. Andrews authority to employ persons for a specific term of one year?

"A. Never!

"Q. To your knowledge, has anyone at Educational Research Council ever been employed for a term of one year?

"A. No sir. It is not our policy."

Dr. Baird testified that appellee's employment was terminated because of the death of a prospective donor. He stated:

"* * * [A]t about that time we had substantial reason to believe that we were going to get a very big grant from a donor who was specifically interested in the field of science, and had even gone so far as to have discussions as to how much might be paid and then he died, and that just put an end to those discussions, and merely overnight what looked like a sure income of nearly $500,000 to us just evaporated."

It is our conclusion, having reviewed all the evidence in this record, that the employment agreement between appellee and the Research Council did not specify a period of time, but rather a rate of salary, and, as such, was terminable at will by either party.

Appellee desired a more permanent employment arrangement. Insofar as she was assigned to a specific department, that objective was achieved. But no evidence, including appellee's own testimony, indicates that appellee was offered employment which specified one year, or any period of time, or that appellee believed the agreement to so specify. Explicit Research Council policy forbade such a contract.

The judgment of the Court of Appeals, which affirmed the trial court's judgment for appellee, is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.