For the reasons stated, the district court is AFFIRMED.

Keith **MEREDITH**, Plaintiff-Appellee,

v.

**ROCKWELL INTERNATIONAL CORPORATION**, Defendant-Appellant.

No. 86–3160.

United States Court of Appeals, Sixth Circuit.

Argued April 23, 1987.

Decided Aug. 17, 1987.

---

7. *See* brief of Appellee at 23–24.

Terrence H. Murphy (argued), Asst. Gen. Counsel, Rockwell Intern. Corp., Pittsburgh, Pa., Cindy Rhodes Victor, Pepper, Hamilton & Scheetz, Detroit, Mich., for defendant-appellant.

Lorin Zaner (argued), Zaner & Cimmerman, Toledo, Ohio, for plaintiff-appellee.

Before MERRITT, WELLFORD and NELSON, Circuit Judges.

WELLFORD, Circuit Judge.

Appellee Keith Meredith went to work for Rockwell Canada [1] in 1950 as an hourly employee in Chatham, Ontario. In October 1971, after more than 20 years with Rockwell Canada, Meredith left to take a position with a competitor, Houdaille Industries. Sixteen months later, in January 1973, Meredith was called by his friend, C. MacGregor Roberts, and persuaded to leave Houdaille and return to work for Rockwell Canada as manufacturing manager at the Chatham bumper plant. Meredith claims that as a basis of his return to Rockwell Canada, Chatham plant manager Roberts orally promised him that Rockwell Canada would employ him in some capacity until he reached his normal retirement age.

In May of 1974, because the Chatham plant was closing, Meredith became the plant manager of a Rockwell bumper plant in Newton Falls, Ohio. At that time Meredith ceased being an employee of Rockwell Canada and became an employee of Rockwell International (Rockwell), operator of the Newton Falls facility. In May 1975, Rockwell removed plaintiff from the position of plant manager at the Newton Falls plant, which was closed sometime after Meredith's removal. He made no complaint at the time that the alleged agreement had been violated.

Almost five years later Meredith filed suit against both Rockwell Canada and Rockwell, based on diversity jurisdiction, claiming wrongful termination. The case was dismissed for lack of diversity jurisdiction. *Meredith v. Rockwell International Corporation,* Case No. C81–187 (N.D.Ohio Nov. 23, 1981). Meredith then filed this suit against Rockwell, claiming specifically that Rockwell breached an agreement to employ him until retirement age. Rockwell moved to dismiss the complaint based on Meredith's failure to join Rockwell Canada, an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. After discovery the district court granted Rock-

---

1. "Rockwell" refers to the defendant-appellant Rockwell International Corporation. "Rockwell Canada" refers to Rockwell International of Canada, a subsidiary of Rockwell International. This court has held that Rockwell Canada and Rockwell are separate entities. *Meredith v. Rockwell International Corporation,* No. 83–3742, slip op. at 2–3 (6th Cir. Nov. 26, 1984) [751 F.2d 386 (table)]. Only Rockwell is before us in this appeal.

well's motion. *Meredith v. Rockwell International Corporation,* Case No. C81–743 (N.D.Ohio Sept. 21, 1983). Meredith appealed and we remanded, holding:

> The district court ... did not appear to recognize that Meredith's alternative theory was that there had been a novation and that, at the time of the alleged breach, Rockwell International, the parent corporation, and only that corporation, was obligated to him under the contract of employment and was liable to him for the breach of contract.

*Meredith v. Rockwell International Corporation,* No. 83–3742, slip op. at 3 (6th Cir. Nov. 26, 1984) [751 F.2d 386 (table)].

We also noted in that 1984 per curiam opinion that

> [i]t is without dispute that Meredith's employment contract upon which he sued was originally made with Rockwell Canada for employment in Canada.... Meredith asserted two theories. One theory was that the corporate veil should be pierced and that the parent and subsidiary corporations be treated as one. Meredith's other theory was that, upon the transfer of his employment from Rockwell Canada's plant in Canada to Rockwell International's plant in Ohio, Rockwell International, with Meredith's approval, assumed the obligations of Rockwell Canada....
>
> The district court ... correctly held that the record demonstrated without dispute that there was no basis for piercing the corporate veil.....

*Id.,* Slip op. at 2–3.

Thus Meredith was foreclosed on his first theory. The case was remanded for further consideration on the second theory, that of novation, to be applied, if at all, "upon transfer of his employment" in 1974. We defined the remaining issues in the controversy on remand as follows: (1) whether Meredith had an enforceable contract with Rockwell Canada; (2) if so, whether a novation of that contract occurred at the time of transfer, substituting Rockwell for Rockwell Canada; and (3) if

so, whether Rockwell breached that contract, based upon the novation.

At the outset of trial after remand, the district judge denied Rockwell's motion *in limine* to strike Meredith's breach of contract claim, ruling that the Ohio statute of limitations was not a bar and also that Rockwell had waived a statute of frauds defense.[2] Meredith voluntarily dismissed Counts II and III. Both at the close of plaintiff's case and after the record was closed, Rockwell moved for a directed verdict on the remaining breach of contract claim. The district court denied Rockwell's motions. On December 13, 1986, the jury returned a verdict for Meredith, awarding him $295,188.00.

Rockwell then filed a motion for judgment notwithstanding the verdict, arguing a failure of proof as to: (1) the elements of novation, including a mutually-intended substitution of Rockwell for Rockwell Canada as a party to a contract; or (2) a contract promising anything other than employment-at-will under Ohio law. The district court denied Rockwell's motion, and Rockwell now appeals.

**1. Novation**

Rockwell first argues that the evidence does not support the finding of a novation whereby Rockwell became contractually liable in the place of Rockwell Canada in 1974 to employ Meredith until his retirement. The law on novation in Ohio was recently summarized in *Bolling v. Clevepak Corp.,* 20 Ohio App.3d 113, 484 N.E.2d 1367 (1984), in which the Ohio court stated that for a novation to be effective *"all* the *parties* must agree to the substitution of the new debtor for the old one, and, therefore, to the new or changed terms pursuant to which the substitution is made. Intent, knowledge and consent are the essential elements in determining whether a purported novation has been accepted." *Id.* at 1379 (emphasis in original) (citations omitted). Concerning the evidence necessary to prove a novation the *Bolling* court held:

---

**2.** We are not called upon to decide the statute of limitations issue, nor the statute of frauds issue,

neither of which was briefed or argued by Rockwell.

A party's knowledge of and consent to the terms of a novation need not be express, but may be implied from circumstances or conduct. *Union Central Life Ins. Co. v. Hoyer,* [66 Ohio St. 344, 64 N.E. 435 (1902)]. But the evidence of such knowledge and consent must be *clear and definite,* since a novation is never presumed. See *Grant-Holub Co. v. Goodman* (1926), 23 Ohio App. 540, 156 N.E. 151. As the court of appeals observed in *Livernois v. Warner-Lambert,* [723 F.2d 1148 (4th Cir.1983)], "one may not accomplish a novation *without negotiating a common understanding* with the other party or parties to an arrangement." (Emphasis added) *Id.* at 1153.

484 N.E.2d at 1379 (emphasis in original) (footnote omitted). The evidence of a novation, therefore, may be implied, but under applicable Ohio law clear and definite evidence must show mutual consent and a common understanding at the time of novation.

In this case, no evidence directly indicates that Rockwell consented at the time of transfer to employ Meredith until retirement. Meredith testified that when he came to Rockwell he spoke to no one about the terms of his employment with Rockwell, and, specifically, that he never discussed with anyone at Rockwell the promise Mr. Roberts at Rockwell Canada had previously made to employ him until retirement. Meredith's own testimony thus establishes that no "negotiation of a common understanding" about guaranteeing him employment until retirement ever took place when he was employed with Rockwell, a separate corporation from Rockwell Canada.

Meredith argues that management at Rockwell knew that Roberts had previously promised Meredith employment until retirement when he returned to Rockwell Canada in 1973, and that when Rockwell made the decision to transfer Meredith to the Rockwell plant in Ohio, Rockwell accepted him subject to the terms of the alleged agreement that Rockwell Canada made with him in Canada. This argument misses the mark. Testimony about knowledge of the terms of Meredith's purported agreement with Rockwell Canada establishes nothing about Rockwell's agreement or acknowledgment of an obligation of employment until retirement when Meredith came to Rockwell's Ohio plant. To establish a novation the evidence must show a *common* understanding and consent to the terms of the novation in 1974; a novation may not be presumed. *See Bolling,* 484 N.E.2d at 1379; *Citizens State Bank v. Richart,* 16 Ohio App.3d 445, 476 N.E.2d 383, 385 (1984). Can novation be presumed from the fact that Rockwell knew about Meredith's agreement with Rockwell Canada and later transferred him from Rockwell Canada to Rockwell's Ohio plant? The problem is that Meredith was dealing with two separate corporate employers. Although one was a subsidiary of the other, Rockwell Canada and Rockwell have been established as two separate and distinct corporate entities.

The evidence Meredith offered at trial to establish a novation consisted of a salary payroll action request, an employee requisition form (noting Meredith's participation in an employee savings plan retroactive to 1974), and a memorandum indicating that pension plan calculations credited Meredith for his years of service with Rockwell Canada. We treat this evidence as circumstantial evidence in support of Meredith's claim that Rockwell acknowledged his years with Rockwell Canada and did not treat him as a new hire. This evidence falls short, however, of constituting "clear and definite" evidence of a novation in 1974 and assumption of a new obligation by Rockwell. A novation is not to be presumed under Ohio law; neither can a key term of the employment contract claimed to constitute a novation be presumed. Meredith offers no clear and definite evidence that when Meredith came to Rockwell, the latter consented or agreed to employ him until retirement. No evidence shows that a Rockwell executive or representative made such an agreement in 1974. Judgment should have been granted on Rockwell's motion for a JNOV on the grounds that the evidence was insuf-

ficient as a matter of law to support a finding of a novation under Ohio law.

Even assuming that the jury's verdict must have indicated a finding that Rockwell managers approved the rehiring of Meredith by Rockwell Canada in 1973,[3] there is no showing that Roberts had the authority or claimed to have the authority to bind *Rockwell* to such an arrangement. Roberts was acting for *Rockwell Canada,* and his oral agreement on behalf of Rockwell Canada which forms the basis for Meredith's claim. Roberts testified only that he hired "exempt employees" such as Meredith with "Detroit approval" (referring to Rockwell). He further testified that he had "full authority to approach Keith Meredith and find out what we had to do.... I contacted Keith." He then testified, after working out seniority retention and salary arrangements, "Keith said, 'all I want is some assurance when I return, if the bumper operation folds, that I still have a job.'" Roberts continued that "Bob [Hodgson][4] assured me that if the operation folds, and it soon did, that Keith would have a job, but there are no guarantees what the job would be." He further testified that Meredith responded: "I don't care what I do as long as I have some security." Roberts testified also that he told Meredith in 1973 that "he would have a job with Rockwell somewhere for the rest of his life."[5]

Meredith had always been, as far as the record shows, only a Rockwell Canada employee and he was dealing with a Rockwell Canada plant manager in discussing his return to employment with Rockwell Canada. Assuming, as Meredith contends, that "Rockwell knew of the terms of Meredith's contract with Rockwell Canada," (Plaintiff's brief at 7), there was still only an agreement *in 1973* with Rockwell Canada, not Rockwell. Meredith testified that he believed that what Roberts told him "was approved" but "did not ask for anything in writing nor did he offer."

The critical absence of proof, direct or circumstantial, relates to *Rockwell's* agreement *in 1974* to assume Rockwell Canada's previous employment commitment with Meredith. The district court's ruling on Rockwell's motion for judgment notwithstanding the verdict reflects a confusion about this key element of proof. The evidence the court relied on was the testimony of Roberts, plant manager at Rockwell Canada, regarding his 1973 undertaking on behalf of Rockwell Canada with Meredith, who was then to be rehired by Rockwell Canada (with Rockwell management approval). The court, and Meredith on appeal, pointed to no other evidence that relates to a 1974 new agreement or "substitution of a new contract"[6] by Rockwell when Meredith transferred to the Ohio plant because of the Canada bumper plant's closing at that time. Meredith himself testified that when the Chatham, Ontario bumper plant closed, he was given other options of continuing work with Rockwell Canada as plant manager of a plastics plant at Gananoque, Ontario, or as plant manager of the plant springs operation for Rockwell Canada in Chatham. Meredith chose the other opportunity: to work as plant manager at Newton Falls for Rockwell. Meredith said he "understood that everything that was agreed upon in Rockwell Canada was transferred with me to Rockwell U.S.," but he conceded that no one discussed with him the "terms of employment" at Rockwell. He also conceded that no one at Rockwell Canada or Rockwell discussed with him *in 1974* the "promises which you say that Mr.

---

**3.** The district court deemed Robert's testimony sufficient "to meet the 'substantial probative value standard,'" and thus overcome the JNOV motion.

**4.** He described Bob Hodgson as his "immediate superior, located in Detroit ... a vice president and group general manager" of Rockwell.

**5.** He said he meant by that until "normal retirement age of sixty-five."

**6.** Black's Law Dictionary defines novation as "substitution of a new contract, debt, or obligation for an existing one, between the same or different parties.... The requisites of a novation are a previous *valid obligation,* an agreement of *all* the parties to a *new contract,* the extinguishment of the old obligation, and the validity of the new one." Black's Law Dictionary 959 (5th ed. 1979) (emphasis added).

Roberts made to you in 1972," [7] and that he spoke only to Roberts about working until retirement. Hodgson testified (after his retirement as a vice president of Rockwell) that neither Roberts nor Meredith ever discussed any such lifetime employment for Meredith with him, and that he had never heard of any such arrangement with any Rockwell employee. Mr. Shaw, former general manager of Rockwell bumper services, testified to the same effect as Hodgson. There was, therefore, no testimony that Rockwell in 1974 agreed to what other witnesses, without contradiction, stated was an "unheard of" employment arrangement, "lifetime" employment at Rockwell.

In sum, there was insufficient evidence of Rockwell's agreement to assume in 1974 the terms of the employment agreement made orally by Meredith and Roberts at Rockwell Canada in late 1972 or early 1973. We must therefore reverse the decision and judgment of the district court.

## 2. Employment-at-will

Rockwell takes the position that even if there were persuasive evidence of employment until retirement, evidence of such an agreement establishes merely an "at-will" relationship, which is indefinite in duration and may be terminable by either. The question is whether the agreement with Meredith, assuming it provided for employment until retirement, was, nevertheless, employment-at-will under Ohio law.

The Ohio Court of Appeals addressed this question in a recent unpublished opinion. *See Frankart v. Jeep Corp.*, No. L–85–062 (Ohio App. Nov. 8, 1985) [Available on WESTLAW, OH-CS database] (available on LEXIS, State library, Ohio file). The employer in *Frankart* orally promised the appellant-employee that he was a "permanent" employee and would have a job "until retirement age." Eight years later the appellant was laid off in a reduction in the employer's work force. *Id.* The employee sued for breach of contract, arguing that his contract was for a definite dura-

tion and thus not terminable at will, but rather lasted "until retirement age." The court rejected this argument and held as a matter of law that the employment was terminable at will.

*Frankart* relied on *Henkel v. Educational Research Council of America*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976), which asserted:

"Generally speaking, a *contract for permanent employment*, for life employment, or for other terms purporting permanent employment, where the employee furnishes no consideration additional to the services incident to the employment, *amounts to an indefinite general hiring terminable at the will of either party*, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages.... Although not absolute, the above stated rule appears to be in the nature of a *strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other...."

*Id.* at 121–22 (emphasis added) (quoting *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587 (1967)). *See also Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150, 153 n. 1 (1985) (quoting *Henkel*). The Ohio Supreme Court in *Henkel* observed that "a contract of permanent employment is by its very nature indefinite." 344 N.E.2d at 122 (quoting *Forrer*).

These Ohio cases seem to preclude Meredith's argument that his claimed oral contract for employment until retirement is employment for a definite term. Meredith, however, also argues that even if his agreement were deemed to be a contract for an indefinite term, it is not terminable at will if the parties intend otherwise, citing *Hedrick v. Center for Comprehensive Alcohol Treatment*, 7 Ohio App.3d 211, 454 N.E.2d 1343 (1982). The parties, of course, may mutually agree to an employment arrange-

---

7. The promises made by Roberts apparently were made in late 1972 or "at the beginning of 1973."

ment, even if based on a promise to retain until retirement, that is other than an at-will arrangement. Here, again, Meredith faces a problem of proving that Rockwell or its representative, not Rockwell Canada, specifically made such an agreement. We have heretofore found insufficient proof of such a Meredith-Rockwell Canada-Rockwell novation.

Meredith's alternative argument is based on promissory estoppel. In *Mers v. Dispatch Printing Co.* the Ohio court held that promissory estoppel limits an employer's right to discharge. 483 N.E.2d at 154. The test is whether the employer should have reasonably expected the employee to rely on the employer's representation, and if so, whether the employee actually relied on the representation to his detriment. *Id.* at 155. Meredith contends that he relied to his detriment on Rockwell Canada's promise to employ him until retirement because that promise induced him to return to Rockwell's subsidiary, Rockwell Canada. The employee in *Frankart*, however, made the same argument, and the Ohio court of appeals concluded that because the employment "until retirement" was only employment-at-will, any reliance on a purported promise of "permanent" employment "must be construed as unreasonable and therefore insufficient to meet the requirements of a cause of action in promissory estoppel." *Frankart*, slip op. at 4 (citing *Henkel*). *Frankart* thus precludes Meredith's promissory estoppel argument.

The district court addressed the employment-at-will issue in cursory fashion. He noted the *Henkel* court's observation that the "stated rule," ("a contract for life employment amounts to an indefinite general hiring terminable at will") is "not absolute" but rather "in the nature of a strong presumption in favor of a contract terminable at will." 344 N.E.2d at 121–22.

The district court did not discuss the circumstances which indicated that Meredith entered into an employment agreement with Rockwell in Ohio during 1974, and which also indicated evidence of agreement by Rockwell to an "unheard of" definite term agreement despite a strong contrary presumption. He merely concluded that "substantial probative evidence" (testimony of Roberts) enabled the jury to find a "valid enforceable contract." The court did not instruct the jury, however, that a contract for "life employment" testified to by Roberts was entitled as a matter of law to a "strong presumption in favor of a contract terminable at will." The district court, moreover, did not have the benefit of *Frankart v. Jeep Corp., supra,* which interpreted *Henkel* and reached a different result in a similar "life employment" controversy.

Thus, even if we held that there was sufficient or "substantial" evidence to support the alleged novation, we would be forced to conclude that the "at will" or indefinite duration employment presumption question was not properly submitted to the jury. It was plain error to have omitted such a "strong presumption" at law for the jury's consideration of the parties' alleged intent concerning the definiteness of the duration of Meredith's receiving "a job with Rockwell somewhere for the rest of his life." [8]

Finally, in light of Meredith's delay for nearly five years in bringing this action without making a prior claim against Rockwell for continued employment, we would have been disposed to examine the amount of the damage award very carefully to determine whether Meredith should have been entitled to back pay during this extended period when Rockwell might otherwise have had an opportunity, with notice of the claim, to alleviate its liability, if any, under the alleged agreement.

For the reasons indicated, we conclude that the jury verdict should have been set aside in favor of defendant Rockwell, and we accordingly **REVERSE** the judgment of the district court.

---

**8.** Whether or not Rockwell's alleged agreement to continue Meredith's employment "until retirement" would be effected by recent legislation extending retirement to a later age beyond sixty-five may add some uncertainty to whether a lifetime hiring arrangement is of definite duration.

MERRITT, Circuit Judge, dissenting.

The Court reaches an unjust result on the basis of faulty reasoning in this contracts diversity case. A multi-national corporation, Rockwell International, transferred the plaintiff employee to the parent corporation from a wholly-owned subsidiary. The jury found that he had made a contract for employment until retirement age with the subsidiary corporation. There was no relevant discussion of the terms of the contract at the time of the transfer to the parent which was at the will and direction of the subsidiary. The question is whether the old contract terms should govern the contract with the parent.

It seems to me that the Court as well as our earlier opinion in this case and the parties are using the word "novation" loosely. What happened here is not really a "novation" but an assumption by the parent of the old employment contract. Call it what you will—a "delegation of performance of a duty," or "substitute contract," see Restatement (Second) of Contracts §§ 280, 318 (1981), or "equitable assignment," or "implied contract" or simply a "contract"—the parent should be held to have assumed the employment undertaking of its subsidiary in the absence of proof that the parties intended a contract with different terms.

The parties and the Court have cited no similar parent subsidiary employment transfer cases and our hasty research has not uncovered cases on point. It seems clear to me, however, that fundamental principles of contractual fairness condemn the result reached by the Court. Are we going to say that every time a parent transfers an employee from one subsidiary to another that the employee loses the benefit of his old contract terms in the absence of any discussion? It seems to me that we should not permit corporate entities to abrogate their responsibilities to their employees merely by ordering their transfer to another member of the corporate group. The expectation of the parties in such a situation is that the old contract will govern unless there is a contrary agreement or a contrary practice in the company. Such a

principle encourages stable employment and job security.

The question for us is whether, in the absence of a "novation" in its technical sense, we should presume that the contract is one for employment at will or is a continuation of the old contract. Stable employment policies are better served by continuity of employment terms than by converting the old contract into a new contract "at will." I therefore dissent.