OPINION
This appeal stems from a lawsuit brought by Robert Moore, appellant, against Kings Island Company ("Kings Island"), appellee, challenging Kings Island's decision to terminate him for violating its drug and alcohol policy. Appellant stated in his complaint that Kings Island had breached an express or implied contract of employment between himself and Kings Island. Additionally, the complaint alleged that Kings Island representatives had made certain promises and representations to appellant regarding the terms and conditions of his employment such that his termination was barred by the doctrine of promissory estoppel. Kings Island filed a motion for summary judgment asserting that appellant was an employee-at-will and his discharge was a consequence of his admitted violation of Kings Island's drug and alcohol policy. The motion was granted by the Warren County Court of Common Pleas and appellant appeals. We affirm.
The evidentiary material provided under Civ.R. 56 reveals that appellant was hired on May 13, 1986 as a rides maintenance mechanic. On its application for employment, Kings Island requires an applicant to sign a statement acknowledging "that if employed, my employment is terminable at the will of either party for any reason at any time." Additionally, after accepting employment, each Kings Island employee is given a book of personnel policies which provides:
 We hope that your relationship with Kings Entertainment Company ["KECO"] will be mutually rewarding and satisfying. However, as we are sure that you can understand, no employee of KECO is guaranteed employment for any period of time. Either you or this company may terminate your employment at any time with or without cause and with or without notice. No employee or representative of KECO other than the President has any authority to enter into any employment agreement for any specified period of time or make any agreement contrary to this policy.
Appellant was assigned to the maintenance crew responsible for servicing the steel roller coasters. Up until the time of his termination, appellant was consistently evaluated as meeting all requirements on his performance evaluations and he was perceived by supervisors and co-workers as being honest and hard-working.
In February 1993, the police were called to appellant's home for a domestic dispute. While there, police noticed drug paraphernalia, marijuana seeds, and "marijuana sticks". The police returned some weeks later with a search warrant and discovered over two hundred grams of marijuana. Appellant was arrested and charged with drug trafficking.
Appellant, concerned about his job, examined Kings Island's drug and alcohol policy.[1] Additionally, appellant spoke with his crew leader, Kelce Smith, about the charges. Appellant testified at his deposition that Smith told him "what you do on your own time is your business." Appellant argued in his response to Kings Island's motion for summary judgment that because he was led to believe that Kings Island's drug and alcohol policy did not apply to off-premises drug or alcohol use, on October 23, 1993, he plead guilty to charges of attempted trafficking of illegal drugs and possession of illegal drugs.
However at his deposition, appellant was asked the following question in reference to the conversation with Smith:
 Q. Okay. Now, if instead of * * * saying to you what you do is your own business, if Kelce [Smith] had said to you well, if you are convicted of drug possession it could cost you your job, what would you have done?
A. I don't really know.
 Q. Would you have done anything differently than what you did do?
A. No.
On November 17, 1993, a local newspaper published appellant's conviction and sentence. The newspaper article came to the attention of Kings Island's Rides Maintenance Manager Edmond Dangler. After confirming the facts through local deputy sheriffs, Dangler consulted with the Kings Island Vice President of Construction and Maintenance, the Kings Island Vice President of Finance, and Kings Island human resources representatives.
On November 23, 1993, appellant was summoned to a meeting where he was questioned about the following: (1) whether he was arrested and convicted of drug charges, (2) whether he knew that using illegal drugs was a violation of Kings Island's drug and alcohol policy, (3) whether he knew he could be discharged from employment for such a violation,[2] (4) whether he had actually used illegal drugs, (5) whether he was still using illegal drugs, and (6) whether he believed his illegal drug use was a problem. Appellant's response to each of the above questions was affirmative. Following appellant's admissions, Dangler stated he had "lost confidence in [appellant's] ability to perform * * * ride maintenance properly," and terminated appellant.
Appellant has raised the following single assignment of error on appeal:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS TO APPELLANT'S BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIMS.
"When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Gerdes v. SuperAmerica, 1997 Ohio App. LEXIS 1553 (Apr. 21, 1997) Butler App. No. CA96-08-171, unreported, at 4, following Jones v. Shelly Co. (1995), 106 Ohio App.3d 440. Summary judgment is appropriate upon a "tripartite demonstration" that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(E); Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
We begin with the principle that, under Ohio's employment-at-will doctrine, "the employment relationship between the employer and the employee is terminable at the will of either; thus an employee is subject to discharge by an employer at any time even without cause." Wright v. Honda of America (1995), 73 Ohio St.3d 571,574, following Henkle v. Educational Research Council of America (1976), 45 Ohio St.2d 249. However, recognizing the harshness of this rule, in 1985, the Ohio Supreme Court created two exceptions to the employment-at-will doctrine: (1) the existence of promissory estoppel where certain representations or promises have been made to an employee; and (2) the existence of implied or express contractual provisions which have the effect of altering the terms and conditions of employment or discharge. See Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100,104-105.
Despite the above exceptions, in the area of employment contracts there still exists a strong presumption that the employment relationship is terminable at will unless the terms of the contract or other circumstances clearly manifest that the intent of the parties is otherwise. Henkle at 255. Thus, unless we find after reviewing the facts in a light most favorable to appellant that reasonable minds could adduce additional contractual terms or other circumstances to overcome this presumption, we must affirm the trial court's grant of summary judgment. Gargasz v. Nordson Corp. (1991), 68 Ohio App.3d 149, 152.
Appellant claims that Kings Island made representations which altered the employment-at-will relationship. Specifically, appellant contends that Kings Island made promises, oral representations, and engaged in a course of conduct that reasonably induced detrimental reliance by appellant.
The prima facie elements necessary for the application of the promissory estoppel doctrine are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the party claiming the reliance must be injured by the reliance. Mosley v. Warrensville Heights 1988 Ohio App. LEXIS 1898, (May 19, 1988), Cuyahoga App. No. 53930, unreported, at 5, following Cohen Co. v. Messina (1985), 24 Ohio App.3d 22, 26. Thus, "[t]he test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraph three of the syllabus. Appellant does not meet this test in the instant case.
The record reveals that neither Kings Island, nor any of its agents, made any clear and unambiguous representations or promises about the terms, length, or conditions of appellant's employment or discharge. Appellant first contends that Kings Island representatives promised that continued satisfactory performance would enable him "to retire" from Kings Island. Second, appellant contends that because Kings Island maintained an informal unwritten policy of fair treatment and fair dealing, Kings Island was estopped from discharging appellant. Appellant asserts that Kings Island was aware of other employees that abused illegal drugs or alcohol and did not discharge them. Third, appellant contends that Kings Island's drug and alcohol policy, which is qualified by the words "on Kings Island property" is not applicable to off-premises illegal drug and alcohol use. In other words, appellant urges this court to read Kings Island's drug and alcohol policy as creating the promise that off-premises illegal drug and alcohol use is not a terminable offense.
However, none of these alleged representations, promises, or policies can be construed as creating a clear and unambiguous promise that would estop Kings Island from terminating appellant for admitted illegal drug use. The record reveals that the evidence of Kings Island's knowledge of employees other than appellant abusing illegal drugs or alcohol is dubious at best. This court also refuses to stretch a stated practice of fair treatment and fair dealing among employees into a clear and unambiguous promise of continued indefinite employment. Furthermore, if Kings Island intended for its drug and alcohol policy to create the promise that recreational illegal drug and alcohol use was not a terminable offense, such a promise is anything but clear and unambiguous. In fact, in light of Kings Island's personnel policy which states an employee may be discharged for "possession, use, or sale of * * * mind altering substances * * *," this court could hold quite the opposite; that Kings Island's personnel policy actually mandates that an employee be discharged for possession, use, or sale of mind altering substances.
Finally, appellant contends that when his crew leader, Smith, stated "what you do on your own time is your business," he created a promise which altered the terms and conditions of appellant's employment such that he believed he could not be terminated if convicted on drug offenses. A close inspection of the record reveals however, that this statement was made in the context of a discussion about appellant's domestic dispute, not his pending drug convictions. Additionally, this statement was not made by a Kings Island representative with the authority to alter the terms and conditions of appellant's employment, but by appellant's crew leader, a person who controlled appellant's daily assignments but could not and did not have the authority to hire or fire appellant, and was not ultimately responsible for appellant's performance evaluations. The personnel policy clearly states that "no employee or representative of KECO other than the President has any authority to enter into any employment agreement * * *." In light of this language, this court cannot construe Smith's statement as altering the terms and conditions of appellant's employment.
Even if this court were to find that Smith's statement altered appellant's at-will status, appellant's promissory estoppel argument fails in light of his admission that he did not rely on the statement. As discussed above, when questioned as to what he would have done differently if Smith had told him he might be terminated for his drug convictions, appellant admitted that he would have done nothing differently. This admission alone vitiates any promissory estoppel argument advanced by appellant. Accordingly, because Kings Island did not make any clear or unambiguous promises to appellant upon which he relied to his detriment, we find that the trial court did not err when it determined that appellant had failed to establish a genuine issue of material fact under the doctrine of promissory estoppel.
Appellant also argues that representatives of Kings Island created an implied contract that Kings Island would apply its drug and alcohol policy fairly and that appellant would not be terminated for drug use occurring off Kings Island property. The legal effect of an implied contract and an express contract are identical. Therefore, the party asserting an implied contract theory has a heavy burden; to prove the existence of all elements necessary for the formation of a contract. See Gargasz v. Nordson Corp. (1991), 68 Ohio App.3d 149, 154. "With this in mind, we note that seldom will an employee, failing to establish promissory estoppel to alter an employment-at-will agreement, be able to establish an implied contract based on the same set of facts." Id. at 154, following Manofsky v. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 671. We find appellant did not meet his burden.
Specifically, appellant failed to prove the existence of a valid contract between himself and Kings Island. First, as part of the conditions of his employment, appellant signed an application for employment which provided that his employment was "terminable at the will of either party for any reason at any time." Second, appellant's handbook contained the disclaimer that "no employee of KECO is guaranteed employment for any period of time" and that only the "President has any authority to enter into any employment agreement for any specified period of time or make any agreement contrary to this policy." Thus, appellant was clearly an at-will employee.
In Wright v. Honda of America (1995), 73 Ohio St.3d 571, the Supreme Court detailed the types of evidence that could be advanced by an employee to raise a factual issue about whether an employment-at-will agreement had been altered by an implied contract: "[T]he trier of fact can consider * * * information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy." Id. at 575.
Appellant's handbook offers no support for his implied contract theory because it clearly articulates he was an employee-atwill, and the record does not reveal that appellant was ever given any written assurances of continued employment with Kings Island. The oral representations upon which appellant relies to support his implied contract are identical to the representations upon which he relied upon to support his promissory estoppel argument. We find these representations equally unpersuasive in this context.
Simply put, appellant was never promised indefinite continued employment by any representative of Kings Island, nor did he have a contract, implied or otherwise, that assured him he would not be discharged if convicted of drug offenses. Furthermore, we find that Kings Island engaged in fair treatment of appellant when on November 23, 1993, it allowed him an opportunity to discuss his arrest and conviction. At that time, appellant admitted knowing that illegal drug use was a violation of Kings Island's policies, that he could be discharged for such a violation, and that he believed his illegal drug use was a problem. In light of these admissions, appellant's termination did not breach any alleged promise or implied contract created between Kings Island and appellant. Accordingly, the trial court did not err when it determined that appellant had failed to establish a genuine issue of material fact under the doctrine of implied contract.
Appellant's sole assignment of error is overruled. Judgment affirmed.
KOEHLER and POWELL, JJ., concur.
[1] Kings Island's drug and alcohol policy, which is provided to all management personnel and supervisors, provides:
I. GENERAL
 "The most important thing we do is provide a safe experience for our guests and ourselves." Kings Island is committed to upholding this standard of excellence by prohibiting drug or alcohol abuse.
II. INTERPRETATION
 Among the acts of misconduct which may result in immiate termination are:
 1. The use, possession, sale, distribution, or other involvement with illegal drugs on Kings Island property * * *. (Emphasis added.)
[2] Kings Island's personnel policy clearly enumerates reasons for dismissal from employment. Specifically, it states:
 While it is the sincere hope of the management of KECO that no one will ever have to be dismissed, all employees should be aware that the following reasons may be cause for dismissal * * *.
 2) Possession, use, or sale of narcotics, barbiturates, hallucinogens, or other mind altering substance * * *.