PYLE, APPELLANT, *v.* LEDEX, INC., APPELLEE.

(No. CA87-09-020 — Decided April 18, 1988.)

*Ruppert, Bronson & Chicarelli Co., L.P.A.,* and *Leslie S. Landen,* for appellant.

*Pickrel, Schaeffer & Ebeling Co., L.P.A.,* and *Janet K. Cooper,* for appellee.

JONES, P.J. Plaintiff-appellant, Conya J. Pyle, was hired by defendant-appellee, Ledex, Inc., on September 8, 1964, as an assembly line worker. Appellant gradually moved up through the ranks until she attained the position of group leader in the shipping/stockroom division in 1980. On September 27, 1985, appellant was discharged for deliberately restricting production when she told two employees in her department to "slow down." Appellant admitted that she made the statement in question but claimed that she was only joking and that her remarks were not meant to be taken seriously.

When she was hired, appellant received what she described as an employee handbook which contained, among other things, certain disciplinary rules. This manual or handbook was eventually replaced by the Ledex "Welcome Book." The Welcome Book contained a section entitled "Rules of the Road," which contained the following:

"Every organization has regulations for the orderly conduct of business and pleasure. People cannot live and work together successfully and enjoyably without order. Some basic 'Rules of the Road' have been established by our Company.

"Here are our rules; they have helped us at Ledex work together for years. Please realize that these rules are based on common sense. Just as you may lose your driver's license if you disregard traffic regulations, you can lose your job at Ledex if you disregard our 'Rules of the Road.'

"* * *

"Take time to study our 'Rules of the Road.' Beside each rule and regulation is listed the discipline that can be taken. Ledex retains the right to create new rules, to amend or delete rules and procedures and to enforce penalties or disciplinary action."

The Welcome Book contained forty "Rules of the Road" which covered employee conduct ranging from the unauthorized use of company telephones for personal reasons to theft of company property. The disciplinary procedure for rule violations included written notice of the violation to the employee, suspension without pay, and discharge. Depending upon the particular rule violated and the seriousness of the infraction, Ledex could invoke any of the three formal procedures or a progressive combination thereof, ultimately resulting in the employee's discharge. Appellant was discharged for violating that rule which prohibited employees from "deliberately restricting production" when she told the two employees in her department to slow down.

In 1984, Ledex issued a number of revisions to the Welcome Book. Included in those revisions was a disclaimer appearing in large prominent lettering on the back cover page of the Welcome Book. It provided that:

"THIS HANDBOOK IS NOT INTENDED TO CONSTITUTE AN EMPLOYMENT CONTRACT BETWEEN LEDEX AND ITS EMPLOYEES. EMPLOYEES ARE FREE TO RESIGN FROM THE COMPANY WHENEVER THEY WISH, AND THE COMPANY IS NOT RESTRICTED FROM TERMINATING AN EMPLOYEE AT ANY TIME FOR ANY REASON."

Appellant could not produce the employee manual provided to her in 1964. She claimed in her deposition, however, that the 1964 manual was substantially similar to the Welcome Book which Ledex later issued in its place. Appellant claimed that she understood the manual's rules and regulations to mean that she would receive job security so long as she obeyed the rules and performed her duties.

On June 5, 1986, appellant filed a complaint against Ledex, alleging four cases of action which included breach of express or implied contract, promissory estoppel, and violation of a duty to deal fairly and in good faith.[1]

On May 27, 1987, Ledex moved for summary judgment. The trial court subsequently granted Ledex's motion, finding that appellant was an employee-at-will and that either appellant or Ledex could terminate the employment relationship for any reason not contrary to law. The court further found that the Welcome Book did not constitute an employment contract or otherwise alter the at-will relationship. The court also found that the disclaimer in the Welcome Book precluded appellant's promissory estoppel action. The court finally determined that Ledex was under no obligation to deal fairly or in good faith within the employment context.

Appellant timely appealed and as her sole assignment of error claims that the trial court erred in granting Ledex's summary judgment motion and dismissing her complaint. Under this assignment of error, appellant raises three issues which essentially claim the following:

1. Appellant claims that the 1964 employment manual setting forth disciplinary rules and procedures creates an express or implied employment contract which cannot be abrogated by a disclaimer in a subsequent manual written nearly twenty years after appellant was hired.

2. Appellant claims that representations in the employee handbook and oral statements by Ledex management serve as a basis for promissory estoppel where appellant justifiably relied on such representations to her detriment.

3. Appellant claims that Ledex was under a duty to deal fairly and in good faith with her when she had relied on the written and oral representations of Ledex during the twenty years of her employment.

I

In reviewing the summary judgment rendered below, our analysis requires a consideration of the employment-at-will doctrine and its application to the case at bar. The basic doctrine recognizes the right of either party to an oral employment contract to terminate the employment relationship for any reason which is not contrary to law. *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150; *Henkel* v. *Educational Research Council* (1976), 45 Ohio St. 2d 249, 74 O.O. 2d 415, 344 N.E. 2d 118. Generally, where the employee furnishes no consideration other than his or her services incident to the employment, the relationship amounts to an indefinite general hiring terminable at the will of either party unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other.

---

[1] Appellant conceded that her fourth cause of action for intentional infliction of emotional distress was without basis and that appellee was entitled to judgment on that cause. Accordingly, the claim of intentional infliction of emotional distress is not before us on appeal.

*Id.* Ohio courts have long adhered to the doctrine's general rule that absent any "* * * facts and circumstances which indicate that the agreement is for a specific term," the employer may discharge the employee at any time, with or without cause. *Id.* at syllabus; *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144; *Evely* v. *Carlon Co.* (1983), 4 Ohio St. 3d 163, 4 OBR 404, 447 N.E. 2d 1290; *South* v. *Toledo Edison Co.* (1986), 32 Ohio App. 3d 24, 513 N.E. 2d 800; and *Peterson* v. *Scott Constr. Co.* (1982), 5 Ohio App. 3d 203, 5 OBR 466, 451 N.E. 2d 1236. See, also, *Meredith* v. *Rockwell Internatl. Corp.* (C.A. 6, 1987), 826 F. 2d 463.

The recent trend, however, as reflected by the Supreme Court's decision in *Mers* v. *Dispatch Printing, supra,* has been to carve out exceptions to the at-will status of employment relationships and limit the employer's right to summarily dismiss an employee. The *Mers* court, while recognizing the continuing efficacy of the doctrine in general, nevertheless established two important exceptions to that doctrine, as reflected in paragraphs two and three of the court's syllabus:

"The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

"The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

The paragraphs quoted above provide the basic foundation for appellant's appeal. Appellant's position is that a genuine factual issue exists with respect to her employment relationship with Ledex in light of the *Mers* decision. Specifically, appellant submits that certain representations contained in the Ledex employment handbook coupled with oral statements by Ledex management call into question the at-will nature of her employment relationship and require resolution of the issue by the trier of fact.

## II

Before addressing the arguments appellant raises on appeal, we first observe that her reliance on our earlier decision of *Dax* v. *Meck* (June 30, 1986), Butler App. No. CA85-05-046, unreported, is misplaced.

The case at bar involves the review of a summary judgment. Such judgment will be granted when it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor. *Adkins* v. *Ontario* (1983), 8 Ohio St. 3d 45, 8 OBR 406, 457 N.E. 2d 317; Civ. R. 56(C).

In *Dax,* we recognized the impact of the *Mers* decision on the employment-at-will doctrine. The *Dax* decision, however, involved our review of a trial court judgment which granted the employer's Civ. R. 12(B)(6) motion to dismiss. As we noted in *Slusher* v. *Oeder* (1984), 16 Ohio App. 3d 432, 16 OBR 503, 476 N.E. 2d 714, a court is limited to the exercise of a stringent standard of law in considering and granting a motion to dismiss, and such motion is viewed

with disfavor and should rarely be granted. The standard involved in granting a motion to dismiss under Civ. R. 12 cannot be compared to that involved in a summary judgment motion. A Civ. R. 12(B)(6) motion only determines whether the pleader's allegations set forth an actionable claim. *Fallang* v. *Hickey* (Aug. 31, 1987), Butler App. No. CA86-11-163, unreported, at 10 ■ Furthermore, if the court considers matters or materials outside the pleadings, it may convert a motion to dismiss into one for summary judgment. See *Fraternal Order of Police* v. *D'Amico* (1982), 4 Ohio App. 3d 15, 4 OBR 36, 446 N.E. 2d 198. In *Dax* our only inquiry as an appellate court was whether the employee *alleged* a cause of action under *Mers,* not whether the employee could actually recover upon her claim. *Dax* v. *Meck, supra,* at 14. With a different standard involved in reviewing summary judgments, our earlier decision in *Dax* does not necessarily imply that judgment was improperly granted in favor of the employer in the case *sub judice.*

With the foregoing in mind, we now examine the specific issues raised in appellant's assignment of error.

### III

### A

Under her first issue, appellant argues that there is a genuine issue of material fact with respect to the employee manual she received when hired in 1964, which was later replaced by the Ledex Welcome Book. According to appellant, the employee manual outlined disciplinary rules and procedures which implicitly promised that employees who obeyed the manual's

rules and regulations and performed their duties would retain their employment. Appellant's position is that the employee manual creates an express or implied contract of employment, thereby altering the at-will relationship between herself and Ledex.

In *Mers* v. *Dispatch Printing, supra,* the Supreme Court recognized that certain facts and circumstances surrounding the employment agreement could alter the relationship and give rise to an express or implied contract of employment. Citing *Hedrick* v. *Center for Comprehensive Alcoholism Treatment* (1982), 7 Ohio App. 3d 211, 7 OBR 272, 454 N.E. 2d 1343; and *Helle* v. *Landmark, Inc.* (1984), 15 Ohio App. 3d 1, 15 OBR 22, 472 N.E. 2d 765, the court recognized that the existence of such a contract could be based upon "employee handbooks, company policy, and oral representations." *Mers* v. *Dispatch Printing, supra,* at 104, 19 OBR at 264, 483 N.E. 2d at 154.

Both parties have cited numerous cases in support of their respective positions regarding the impact of employee handbooks on at-will employment relationships. Several appellate courts, in line with the *Mers* decision, have held that the employer's use of an employee handbook or manual can alter or modify the at-will relationship and create a "contract" with the employee. *Biskupich* v. *Westbay Manor Nursing Home* (1986), 33 Ohio App. 3d 220, 515 N.E. 2d 632; *Brown* v. *Otto C. Epp Hosp.* (1984), 19 Ohio App. 3d 25, 19 OBR 90, 482 N.E. 2d 988; *King* v. *Hospital Care Corp.* (May 13, 1986), Allen App. No. 1-85-1, unreported; *Day* v. *Good Samaritan Hosp. & Health Ctr.* (Aug. 17, 1983), Montgomery App. No. 8062, unreported; *Helle* v. *Landmark, supra*; and *Hedrick* v. *Center, supra.* Cases in which the courts have refused to recognize an employee handbook as

constituting a contract or altering the employment-at-will status include *Jones* v. *East Center for Community Mental Health, Inc.* (1984), 19 Ohio App. 3d 19, 19 OBR 85, 482 N.E. 2d 969; *Smith* v. *St. Elizabeth Medical Ctr.* (Oct. 14, 1986), Montgomery App. No. CA 9676, unreported; *Rachubka* v. *St. Thomas Hosp. Med. Ctr.* (Oct. 10, 1984), Summit App. No. 11596, unreported; and *Procuniar* v. *General Motors Corp.* (Apr. 9, 1984), Montgomery App. No. 8427, unreported.

While appellant submits that the Welcome Book raises a genuine issue of fact regarding its effect on her status as an at-will employee, Ledex takes the position that the general disclaimer in the Welcome Book repudiates the existence of a contract, whether express or implied, and nullifies any employee's reliance upon the manual as creating such a contract. In *Procuniar* v. *General Motors, supra,* and *Rachubka* v. *St. Thomas, supra,* the courts found that disclaimers in employee handbooks prevented those handbooks or manuals from changing the at-will status of the employees. Because of the disclaimers, the manuals alone were insufficient to create an employment contract which bound both employer and employee.

Appellant counters by arguing that *King* v. *Hospital Care, supra,* is controlling since it is more factually similar to the case at bar. In *King,* the Allen County Court of Appeals refused to uphold a disclaimer clause in an employee handbook because the disclaimer was not part of the handbook when the employee was hired, but was later inserted shortly before the employee's discharge. Referring to the disclaimer, the court stated that:

"* * * [T]his clause was not part of a contract accepted by the appellant when he became an employee of the appellee company. * * *

"* * *

"There is evidence that the appellant was aware of all the original handbook provisions, and being so aware continued to work for the appellee corporation, thereby accepting these as terms to the contract. The company could not thereafter by amendment unilaterally change the condition of the implied employment contract." *Id.* at 11-12.

See, also, *Helle* v. *Landmark, supra,* wherein the court refused to uphold an employee manual's general disclaimer because the employer made several oral representations which were inconsistent with the manual's provisions.

In *Smith* v. *St. Elizabeth, supra,* at 1, the court observed that an employer may "unilaterally amend or terminate its policy." The employer did so by revising its employee handbook after the employee was hired. The manual contained a general disclaimer which both reserved the employer's right to terminate employment and stated that nothing in the manual should be considered as altering the at-will relationship. The decision does not specify, however, what particular revisions were made subsequent to the employee's hiring and whether the disclaimer clause was originally part of the handbook when the employee was hired, or a revision which was inserted after the employee was hired. It would seem, however, that if the employer may unilaterally amend or terminate any policy within its employee manual or handbook, such would include the insertion of a general disclaimer clause.

In addition to the general disclaimer, the Welcome Book also contained a provision in its "Rules of the Road" section which stated that Ledex retained the right to implement new rules and amend or delete existing rules and procedures with respect to penalties and disciplinary actions. This

provision implies that the disciplinary rules are not perpetual, but subject to whatever revision and amendment Ledex deems appropriate. Accordingly, that which is currently proscribed could eventually become acceptable employee conduct, and that which is now permissible could in the future be prohibited. Given such unpredictability, it seems incongruous that the disciplinary sections — which, by their own terms, are subject to constant change — of the Ledex manual, let alone the entire manual, could provide the basis for an express or implied contract.

While it is true that an employee may be dismissed for violating a code of regulations, it does not necessarily follow that an employee's adherence to such rules will automatically preclude his or her dismissal for totally unrelated reasons. The employer's threat to discharge an employee for violating disciplinary rules cannot be construed as a promise of job security if the rules are observed. In other words, simply obeying the rules will not guarantee continued employment. In addition, the handbook disclaimer does not represent an attempt by the employer to negate an "employment contract." Rather, it is simply a clarification and reaffirmation of the existing employment-at-will relationship between the parties. The disclaimer merely reemphasized that which already existed — an at-will relationship which could be terminated by either party for any reason.

We conclude that the trial court correctly determined that there was no genuine issue of material fact regarding the existence of an express or implied contract between the parties based upon the Ledex Welcome Book. Accordingly, appellant's first issue is without merit.

## B

In her second issue, appellant argues that summary judgment should not have been granted on her promissory estoppel claim. Appellant alleges that she relied on the Welcome Book and oral representations by her supervisors to her detriment. Although she could not recall the specific content of conversations with her supervisors, appellant remembered how, in general terms concerning rules in the employee manual or Welcome Book, she was told that "it's stated in the rule book that if you do this, you can't be fired. If you don't do this, you can be." Appellant claims that she relied on these representations as meaning that she could not be terminated without just cause. Appellant understood her conversations with superiors as meaning that so long as the rules were obeyed "your job was safe, that you would remain employed * * *. They made you feel that your job was secure."

Paragraph two of the syllabus in *Mers* v. *Dispatch Printing, supra,* states that promissory estoppel is applicable to at-will employment agreements if the employer should have reasonably expected the employee to rely on its representations, and if the expected action or forbearance actually resulted and was detrimental to the employee.

In *Moore* v. *Middletown Regional Hosp.* (June 22, 1987), Butler App. No. CA86-11-166, unreported, we reviewed a similar promissory estoppel claim and concluded that the trial court properly granted summary judgment to the employer. In that case, the employee was told the following:

" 'You get out there and do a good job. We'll take care of you, and we'll do you right. You do us right; we'll do you right * * *.

" 'You do us a good job, do your work, and we'll see that you're employed by Middletown Hospital as long as you do your work.' "

We held that these remarks did not

rise "to the level of the sort of promise necessary to invoke promissory estoppel." *Id.* at 5-6.

When asked whether she would have remained at Ledex if she knew she could be dismissed without just cause, appellant answered, "Perhaps not." Appellant alleges that she detrimentally relied on the statements of Ledex management by remaining at Ledex rather than moving to another employer where job security was more readily available. There are no specific examples in the record, however, of any other positions or jobs which appellant passed over in order to remain at Ledex. In addition, the action or forbearance which the disciplinary rules were designed to induce was acceptable employee conduct conducive to the orderly and efficient operation of Ledex's business, not an employee's "promise" to remain at Ledex. We find, as we did in our earlier decision in *Moore,* that the general statements alluded to herein, coupled with the Welcome Book, are insufficient as a matter of law to induce the necessary action or forbearance to support a promissory estoppel claim. Appellant accordingly fails on her second issue.

### C

For her third and final issue, appellant contends that Ledex violated its duty to deal fairly and in good faith with appellant. According to appellant, Ledex owes such a duty because of appellant's extended period of service and her reliance upon representations which she equated to promises of job security.

We note that the Ohio Supreme Court has refused to recognize a cause of action based upon a covenant of good faith and fair dealing, but has instead held that at-will employment relationships may be terminated for any cause and at any time "even if done in gross or reckless disregard of an employee's rights." *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 102, 23 OBR 260, 261-262, 491 N.E. 2d 1114, 1116. See, also, *Mers* v. *Dispatch Printing, supra.* We have also specifically refused to establish such a duty on the part of an employer based upon an employee's extended term of employment. *Moore* v. *Middletown Regional Hosp., supra.* We continue to adhere to the principle enunciated in *Moore* and hereby reaffirm our position regarding the existence of a covenant of good faith and fair dealing. By virtue of the Supreme Court's pronouncement on the subject, we find that Ledex violated no such duty by dismissing appellant and accordingly conclude that appellant's third issue is without merit.

### IV

In conclusion, we find that there were no genuine issues of material fact and that, as a matter of law, appellant and Ledex maintained an employment-at-will relationship which permitted either party to terminate the relationship. The assignment of error is not well-taken and is hereby overruled. The summary judgment granted to Ledex is, in all respects, therefore affirmed.

*Judgment affirmed.*

HENDRICKSON and KOEHLER, JJ., concur.