JOURNAL ENTRY AND OPINION
Stephanie Pupillo appeals from a decision of the common pleas court granting summary judgment to St. Vincent Charity Hospital in connection with her claims for promissory estoppel and fraud arising from promises of job security she asserts had been made to her by the hospital. On appeal, Pupillo claims the trial court erred in determining she did not establish that a clear and unambiguous employment promise had been made to her and that she failed to establish any other elements of her promissory estoppel claim, and further she asserts the trial court erred in granting summary judgment on her fraud claim because she claims the hospital failed to raise that issue in its motion for summary judgment. After a careful review of the record and applicable law, we have concluded that these claims are not well taken and we therefore affirm the judgment of the court.
The record reveals that on October 27, 1997, Pupillo became employed as a manager in the case management department at St. Vincent Charity Hospital, earning an annual salary of $48,000. At that time, the human resources department of the hospital sent her a letter, which stated, inter alia, employment at Columbia St. Vincent Charity Hospital is at the will of the hospital and the employee.
Throughout the duration of her employment at the hospital, however, Pupillo claims that Julaine Gates, her supervisor and a Vice President of Nursing Services for the hospital, made representations of job security to her on several different occasions.
In February 1999, Pupillo was laid off from her job at the hospital; and on October 20, 1999, she filed a complaint against the hospital challenging her layoff, asserting promissory estoppel and fraud based on Gates' representations to her. In her suit, she alleges that she relied to her detriment on the representations of job security made to her by Gates in purchasing a homesite in Broadview Heights for $100,000 and she further alleges that after her layoff, she incurred $30,000 in credit card debt due to her inability to build on the lot and her need to make dual payments on both her condominium and the lot. Pupillo sought a judgment of $500,000 in compensatory and $1,000,000 dollars in punitive damages against the hospital.
On September 27, 2000, the hospital filed its motion for summary judgment, asserting that Pupillo had failed to establish any of the elements of promissory estoppel and had presented no evidence on her fraud claim. The court found that Pupillo failed to demonstrate a clear and unambiguous promise made by the hospital because the assurances allegedly made by Gates were primarily tied to a survey project conducted by the hospital and did not relate to any specific period of time. The court further found that Pupillo failed to establish that she relied to her detriment on the alleged representations of job security in that she did not produce evidence that she turned down other employment opportunities in reliance on the hospital's representations. The court also found that Pupillo failed to produce evidence to support her fraud claim. Therefore, the court granted summary judgment in favor of the hospital on both claims. Pupillo appealed and has presented three assignments of error for our consideration.
The first and second assignments of error concern her promissory estoppel claim and will be considered together.
 I. THE TRIAL COURT ERRED IN DETERMINING THAT NO CLEAR AND UNAMBIGUOUS PROMISE WAS MADE.
 II. THE TRIAL COURT ERRED IN DETERMINING THAT PLAINTIFF COULD NOT MEET THE OTHER ELEMENTS OF HER PROMISSORY ESTOPPEL CLAIM.
Pupillo contends that the trial court erred in finding that she failed to establish the essential elements required for a promissory estoppel claim. The hospital asserts that the trial court properly granted summary judgment. The issue then concerns whether the trial court correctly granted summary judgment in favor of the hospital on Pupillo's promissory estoppel claim.
In reviewing summary judgment, an appellate court will review de novo the pleadings and evidentiary material submitted to the trial court and apply the same standard to determine whether the materials submitted establish a genuine issue of material fact. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127.
Pursuant to Civ.R. 56(C), summary judgment is proper when:
 (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.
Furthermore, under Civ.R. 56(C), the party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280. Once the moving party satisfies this burden, the nonmoving party then has the burden to set forth specific facts showing that there remains a genuine issue for trial; summary judgment is proper if the nonmoving party fails to set forth such facts. Id.
The doctrine of at-will employment is well established in Ohio. Under this doctrine, the employment relationship between the employer and the employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time even without cause. See Wright v. Honda of America (1995), 73 Ohio St.3d 571, 574. However, the Ohio Supreme Court has created certain exceptions to this rule, among them the doctrine of promissory estoppel. In Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d, the court stated, in paragraph three of its syllabus:
 The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.
To successfully make out a prima facie case of promissory estoppel, a plaintiff must demonstrate that a clear and unambiguous promise is made; that the party to whom the promise is made relied on it; that the reliance is reasonable and foreseeable; and that the plaintiff is injured as a result of the reliance. See Weiper v. W.A. Hill Assoc. (1995),104 Ohio App.3d 250.
As to the kind of promises that a plaintiff needs to establish, the law is that a vague or indefinite promise of future employment does not support a promissory estoppel claim. See Daup v. Tower Cellular, Inc. (2000), 136 Ohio App.3d 555, 563.
In addition, as the court stated in its syllabus in Helmick v. Cincinnati Word Processing Inc. (1989), 45 Ohio St.3d 131:
 3. Standing alone, praise with respect to job performance and discussion of future career development will not modify an employment-at-will relationship. * * *
Moreover, promises of continued employment must be for a specific term in order to establish a prima facie claim for promissory estoppel. See Condon v. Body, Vickers and Daniels (1994), 99 Ohio App.3d 12, 20-21; Onysko v. Cleveland Public Radio (July 27, 2000), Cuyahoga App. No. 76484, unreported.
With regard to the element of detrimental reliance, the court, in Talley v. Teamsters, Chauffeurs, Warehousemen, Helpers, Local No. 377 (1976), 48 Ohio St.2d 142, 146, adopted the standard set forth in Restatement of Contracts 2d (1973), Section 90, and stated:
 A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
Our court, in Onysko, summarized the law regarding detrimental reliance in the employment context:
 * * * Many courts have found that as a matter of law, refraining from seeking other employment cannot constitute detrimental reliance unless the employee, in relying on the promise, in fact, rejected employment offers. See cases cited in Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 17-18, 711 N.E.2d 726. As the court found in Nilavar, "without evidence that [the plaintiff] would have found employment, during whatever lapse in time was caused by his reliance, no court could determine what damages, if any, resulted from his reliance." Id. at 18. See, also, Srail v. RJF Internat'l Corp. (1998), 126 Ohio App.3d 689, 709, 711 N.E.2d 264; Pyle v. Ledex (1988), 49 Ohio App.3d 139, 146, 551 N.E.2d 205 (no detrimental reliance where record contains no specific examples of any other jobs or positions the employee passed over).
 As a matter of law, refraining from seeking other employment cannot amount to detrimental reliance unless the at-will employee, in relying on the promise, actually rejected employment offers. Nilavar v. Osborn, 127 Ohio App.3d 1 at 17-18, 711 N.E.2d 726 (1998); Eagleye v. TRW, Inc., 1994 Ohio App. LEXIS 588 (Feb. 17, 1994), Cuyahoga App. No. 64662, unreported at 4. An at-will employee who claims reliance in not looking for other work cannot distinguish himself from an employee who simply continues working. Humphreys v. Bellaire Corp. (C.A.6, 1992), 966 F.2d 1037, 1041.
Here, because Pupillo had no written or oral contract of employment, her employment is governed by an at-will relationship. Pursuant to this relationship, either party may terminate the employment for any reason not contrary to law. Mers, supra. To support a claim that her at-will employment had been altered by hospital representations of job security upon which she relied to her detriment, Pupillo had an obligation to present evidence to establish all the elements of a promissory estoppel claim.
The record here contains her affidavit in which she stated that she met with Gates on July 13, 1998 to discuss the goals of the department and the status of her job, at which time she claims she told Gates about her plan to purchase some real estate, and Gates allegedly responded that the organization had decided to keep and train only their good managers and that her job was secure. The record also contains notes made by Pupillo concerning an August 13, 1998 meeting which Gates held with several employees but which Pupillo did not attend. Her note stated, inter alia,: Discussed receiving top rating from JCAHO. This was our top priority. Julaine again said that all of our jobs were secure. That she wanted to be sure we knew that so we wouldn't be looking for jobs. The record further contains notes she took in connection with a September 11, 1998 meeting, which stated: Received news of Sharon Darkovich's resignation. Julaine told story of other employers not telling their good employees that jobs were secure. Did not want us looking for jobs, said JCAHO was top priority. As Pupillo admitted herself at her deposition, the bulk of Gates' assurances had to do with the upcoming JCAHO/Joint Commission survey to be conducted as part of the merger then taking place between St. Vincent Hospital and St. Luke's Medical Center.
Our review of the record fails to disclose a clear and unambiguous promise of job security: despite her claim that Gates repeatedly assured her and several other employees that they had job security, the record indicates that these assurances had been made to a group of employees generally and referred primarily to managerial skills or value as employees, and had been made primarily in the context of the JCAHO survey project; nothing on the record suggests a specific promise of a specific job to Pupillo. Scanlon, supra, Helmick, supra.
More importantly, Gates' alleged assurances of job security lack the durational specificity required by law: in her representations, Gates never referred to any specified duration of employment. Rather, the representations related mostly to the JCAHO survey project, which, by Pupillo's admission, did not have a fixed date of completion. Therefore, the evidence offered by Pupillo, at best, demonstrates her own subjective interpretation of the employment relationship; she has not offered evidence to show promises of an employment relationship for a specific period of time. These assurances, without more specificity, do not amount to the clear and unambiguous promise as required by law.
Supporting our conclusion that no clear and unambiguous promise had been made by the hospital to Pupillo is her deposition testimony in which she admitted that as late as the September 11, 1998 meeting, the subject matter of job security was still a concern for her.
Moreover, Pupillo failed to meet her burden to establish detrimental reliance. Here, Pupillo attempted to demonstrate detrimental reliance by asserting in her complaint that she did not look for alternative employment because of Gates' assurances of job security, which induced her not to look for other positions, and that she and her husband purchased a lot in Broadview Heights for $100,000 based in part upon promises of job security.
Regarding her contention of refraining from seeking other employment, the record does not sufficiently establish forbearance
Pupillo needed to present evidence that she actually turned down other employment offers. See Talley and Onysko, supra.
Regarding the purchase of a lot in Broadview Heights, Pupillo has not demonstrated detrimental reliance because this purchase is not reasonably related to her employment and because she has not established any loss resulting from it.
Because Pupillo has failed to produce evidence to establish that the hospital made a clear and unambiguous promise of employment to her for a specific term or that she reasonably and foreseeably relied on such a promise, or demonstrated forbearance or injury, the trial court properly granted summary judgment in favor of the hospital on her promissory estoppel claim. Pupillo's first and second assignments of error, therefore, are not well taken.
 III. THE TRIAL COURT ERRED WHEN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIM SINCE THE DEFENDANT FAILED TO RAISE IT IN ITS ORIGINAL MOTION.
Pupillo complains that summary judgment on her fraud claim is improper because St. Vincent Charity Hospital did not raise it in the original Motion.
Here, a review of the record shows that the motion for summary judgment specifically states: Plaintiff failed to establish any of the elements of promissory estoppel, and has presented no evidence whatsoever regarding her claim that St. Vincent Charity Hospital fraudulently withheld information from her. Although its brief in support of the motion did not elaborate on this claim, Pupillo had notice that the hospital sought summary judgment on her fraud claim. Furthermore, in her brief opposing the summary judgment, she responded to the assertion that she failed to present any evidence on the fraud claim by pointing to evidence in the record that she argued would support that claim. Therefore, Pupillo's claim of lack of notice is rebutted by the record, and we are satisfied from this review that the hospital sought summary judgment on this claim. Accordingly, the trial court did not err in ruling on it and we overrule this assignment of error.
On the basis of the foregoing, we affirm the judgment of the trial court.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR