OPINION
{¶ 1} Plaintiff-appellant, Julie Volbers-Klarich, appeals the decision of the Butler County Court of Common Pleas granting the motion to dismiss pursuant to Civ. R. 12(B)(6) by defendants-appellees, Middletown Management, Inc. and Middletown Innkeepers, Inc. (hereinafter Middletown Management). We affirm the trial court's decision.
 {¶ 2} Middletown Management owns and operates the Hampton Inn in Fairfield, *Page 2 
Ohio. Appellant stated that she is part of a class which includes "all other unnamed or yet unknown number of individuals and/or corporations which purchased lodging at the Hampton Inn, as a paying guest from 1999 through the date of filing th[e] complaint" who were supposedly overcharged nonexistent room taxes. Appellant's complaint alleged that she stayed at the Hampton Inn in August of 2002 where she was charged room taxes which exceeded the taxes allowable by law. In particular, appellant asserted that Middletown Management has been charging their customers excessive sales and excise taxes in the amount of 12 percent since 1999. According to appellant, the maximum amounts Middletown Management could have charged were 5.5 percent from 1999 to September 30, 2003, and 8.5 percent from October 1, 2003 to the present.[1]
Appellant's complaint further claimed that Middletown Management has been converting the difference between the tax amounts they charged their guests, and the tax amounts required by law.
 {¶ 3} Middletown Management moved to dismiss pursuant to Civ. R. 12(B)(6) arguing appellant failed to state a claim upon which relief could be granted.[2] Oral argument was heard on the matter, and the trial court granted the motion to dismiss. Appellant now appeals the trial court's decision by raising one assignment of error. *Page 3 
 {¶ 4} "THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF-APPELLANT'S CLAIMS AGAINST DEFENDANT-APPELLEE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO CIVIL RULE 12(B)(6) BECAUSE THE IMPROPER TAX COLLECTION CLAIMS WERE PROPERLY ASSERTED AGAINST THE DEFENDANT-APPELLEE; PLAINTIFF-APPELLANT ASSERTED A PROPER CLAIM UNDER THE OHIO CONSUMER SALES PRACTICES ACT; AND PLAINTIFF-APPELLANT'S FRAUD CLAIM WAS STATED WITH SUFFICIENT PARTICULARITY."
 {¶ 5} "A motion to dismiss for failure to state a claim upon which relief can be granted * * * tests the sufficiency of the complaint."State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs. (1992),65 Ohio St.3d 545, 548. "A [successful] Civ. R. 12(B)(6) motion only determines whether the pleader's allegations set forth an actionable claim."Pyle v. Ledex, Inc. (1990), 49 Ohio App.3d 139, 143.
 {¶ 6} "In order for a complaint to be dismissed under Civ. R. 12(B)(6) * * *, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief." Cincinnati v.Berretta U.S.A. Corp., 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 5. "In construing a complaint upon a motion to dismiss for failure to state a claim, we must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." York v. Ohio State Hwy.Patrol (1991), 60 Ohio St.3d 143, 145.
 {¶ 7} "An order granting a Civ. R. 12(B)(6) motion to dismiss is subject to de novo review." Perrysburg Twp. v. Rossford,103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. Thus, a reviewing court must independently review the complaint to determine whether dismissal was appropriate, and need not defer to the trial court's decision. Chinese Merchants Assoc.v. Chin, 159 Ohio App.3d 292, 2004-Ohio-6424, ¶ 4. *Page 4 
 {¶ 8} Appellant argues that the trial court was incorrect in granting Middletown Management's Civ. R. 12(B)(6) motion. Within this single assignment of error appellant raises three sub-issues. The first of these issues is her argument that she properly asserted claims against Middletown Management rather than the purported taxing agencies.
 {¶ 9} In its decision the motion to dismiss, the trial court found that Middletown Management was not the proper party in a suit to obtain a refund for the nonexistent taxes. Instead, the trial court found that the proper parties were taxing entities, in whose names the taxes were collected. In reaching this decision, the trial court primarily relied on two cases: Parker v. Giant Eagle, Inc., Mahoning App. No. 01 C.A. 174, 2002-Ohio-5212; and Bergmoser v. Smart Document Solutions,L.L.C. (N.D.Ohio Feb. 22, 2007), Case No. 1:05CV2882, 2007 WL 634674, affirmed (C.A.6, 2008), 268 Fed.Appx. 392.
 {¶ 10} Appellant argues that both Parker and Bergmoser dealt with consumers requesting refunds of overcharged and wrongfully assessed "state" taxes, whereas the "taxes" collected by the Hampton Inn were excise in nature rather than sales taxes, thus making any laws and cases regarding state tax refunds inapplicable. In addition, appellant claims she is not seeking a refund of illegally collected taxes, but is instead bringing claims of fraud and a violation of R.C. Chapter 1345, otherwise known as the Ohio Consumer Sales Protection Act (OCSPA).[3] Appellant also argues that the county and city are not obligated to refund the "taxes" because no county or city tax ordinance was in effect when she stayed at the Hampton Inn. Finally, appellant contends that Middletown Management should not be allowed to "escape liability," by calling the *Page 5 
charge a "tax" on her invoice.
 {¶ 11} We are unaware of any cases that have dealt with this particular issue directly, but we are guided, as was the trial court, by past decisions involving refund claims for taxes improperly collected or assessed.
 {¶ 12} In Decor Carpet Mills, Inc. v. Lindley (1980),64 Ohio St.2d 152, the Ohio Supreme Court determined that state sales taxes, even those wrongfully collected, are a "tax collection for the benefit of Ohio." Id. at 154-55. Furthermore, the Decor court stated that the party collecting the taxes is merely a trustee for the state. Id. Thus,Decor stands for the proposition that any taxes, even those which are overpayments, which are collected on behalf of the state belong to the state as the party collecting the taxes is merely a trustee of those funds. Id.
 {¶ 13} The Second Appellate District, in Barker Furnace Co. v.Lindley (June 2, 1981), Montgomery App. No. 6813, 1981 WL 2815, found that where a party charges and collects a nonexistent tax under the apparent authority of state law, the party may not keep the amount collected just because collection was erroneous. Id. at *3. TheBarker court noted, "so long as the collection purports to be acollection of sales tax, the vendor is responsible for payment to the State." (Emphasis added.) Id. The policy behind this, said the court, is that no one but the state should benefit from the collection of a tax. Id. Finally, the Barker court observed that by collecting the nonexistent taxes from its customers, the company assumed the responsibility for the collections and "the duty to remit them to the State." Id. at *4. Therefore, by characterizing a charge as a state tax, even if it is nonexistent, a vendor has a "duty to remit them to the State." Id.
 {¶ 14} In Parker v. Giant Eagle, Inc., 2002-Ohio-5212, a customer filed suit against a grocery store claiming it had overcharged her state sales tax on her groceries; however, her case was dismissed by the trial court for failure to state a claim on which relief could be *Page 6 
granted. Id. at ¶ 1, 6. On appeal, the Seventh Appellate District held that the plaintiff should have filed her suit against the state of Ohio, in the Ohio Court of Claims, as it would ultimately be the state's treasury that would be affected if her claim was successful. Id. at ¶ 29-30. The Parker court stated that the grocery store was under a duty to remit the taxes to the state, and even if the store had failed to remit them, the state still had a "right to receive th[e] funds." Id. at ¶ 29. The court pointed out that if the plaintiff was successful in her suit against the grocery store, it would in fact hinder or preclude the state's rights to the funds collected. Id. In essence, Parker suggests that a party must file against the taxing entity, rather than the vendor, as the refund should come from the state's treasury, whether or not the taxes were actually remitted to the state. Id. at ¶ 29-30.
 {¶ 15} In City of Findlay v. Hotels.Com, L.P. (N.D.Ohio 2006),441 F.Supp.2d 855, Findlay filed suit against several online travel companies based on underpayment of guest occupancy taxes to the city. Id. at 857-58. Relying on Barker, the district court found that the policy that no one should derive a benefit from sales taxes except the taxing entity was sound and applied to Findlay's claims. Id. at 861. The court also said "that even when a taxing statute fixes no liability, the collector is responsible for its payment to the proper taxing authority as long as the collection purports to be a collection of the tax." (Emphasis sic.) Id., citing Barker, 1981 WL 2815 at *8-9. Although the city was only trying to collect underpayments of existing taxes,Findlay essentially applied the state tax line of cases to actions regarding local taxes.[4]
 {¶ 16} Finally in Bergmoser, 2007 WL 634674, plaintiffs filed suit against Smart alleging, inter alia, fraud, and a violation of the OCSPA based on impermissibly being charged sales tax and excessive postage for copies. Id. at *1. The district court found that *Page 7 
Ohio Adm. Code 5703-9-07 sets forth the procedure a consumer must use in order to obtain a refund of state sales tax. Id. at *2. A consumer's sole remedy, to obtain a state sales tax refund, is to file an application for refund with the tax commissioner, as it is the state's treasury that will be affected by the refund. Id., citingParker, 2002-Ohio-5212 at ¶ 29. The Bergmoser court further stated the rationale in Parker is "that a consumer does not have a direct cause of action against a vendor who over-collected or wrongfully collected taxes." Id. at fn. 2. The court also noted that if a vendor failed to remit excessive taxes to the state, the state has a right to those funds. Id., citing Parker at ¶ 29. As to the plaintiffs' OCSPA claims, the Bergmoser court dismissed them finding, "if [the] defendant wrongfully assessed and collected sales tax, plaintiffs' proper remedy is to file an application with the tax commissioner." Id. at *3.
 {¶ 17} While we agree with appellant to the extent that most of the prior case law deals with state tax refunds, and the tax at issue in this case would clearly be considered an excise tax, we believe the rationale espoused by these cases is sound. Therefore, when a consumer seeks a refund of taxes, even where they are nonexistent taxes, the consumer must apply to the taxing entity for a refund. SeeParker, 2002-Ohio-5212 at ¶ 29-30; Bergmoser, 2007 WL 634674 at *2-3.
 {¶ 18} Even though Butler County and Fairfield were not collecting excise taxes for lodging at the time of appellant's stay, and presumably have never collected them from Middletown Management, at least until they each enacted taxing legislation, they are entitled to those funds since they were collected by the Hampton Inn as trustee for Butler County and Fairfield. See Decor, 64 Ohio St.2d at 154-55; City ofFindlay, 441 F.Supp.2d at 861; Barker, 1981 WL 2815 at *3-4. It is thus the responsibility of Butler County and Fairfield to refund those monies to the appropriate parties, as it would ultimately be the county and city's treasuries that would be affected by any refunds, even for taxes erroneously or illegally *Page 8 
collected. See Parker, 2002-Ohio-5212 at ¶ 29-30; Bergmoser,2007 WL 634674 at *2; Barker, 1981 WL 2815 at *3-4. Because appellant must seek any refund from Butler County and Fairfield, Middletown Management is not a proper party to her claim for reimbursement.[5]
 {¶ 19} While appellant argues Middletown Management will "escape liability" if we affirm the trial court's dismissal, we can only point out that any excise taxes collected by the Hampton Inn were collected for the benefit of Butler County and Fairfield and belong wholly and solely to them. Therefore, Middletown Management cannot escape liability for the collection because both the county and the city can lay claim to the money that was collected in their names.
 {¶ 20} After a careful review of the legislation for Butler County (Resolution Nos. 03-8-1314 and 03-9-1542) and Fairfield (Codified Ordinances Chapter 187), we have been unable to locate an analogous procedure to that contained within Ohio Adm. Code 5703-9-07 for the refund of state sales tax. However, this in no way means that such a procedure does not exist. While we recognize that Fairfield has a refund procedure, in Codified Ordinances 187.04, to return illegal or erroneous payments made to vendors or to transient guests where the guest has paid the city directly, they do not indicate how a transient guest obtains a refund of illegal or erroneous taxes paid directly to a vendor. Here we are guided by the Parker court which was faced with a similar dilemma. Prior to the amendment of R.C. 5739.07, which now allows consumers to apply to the tax commissioner for a refund, the Parker court found that even in the face of no applicable procedure, the consumer still had to apply to the taxing entity for a refund. Parker, 2002-Ohio-5212 at ¶ 15-29; accord Bergmoser, 2007 WL 634674 at *2, fn. 2.
 {¶ 21} Based on these prior decisions, which dealt with what we believe to be *Page 9 
substantially similar issues, we find that Middletown Management is not a proper party, in this particular suit, to reclaim the money appellant paid to the Hampton Inn for nonexistent county and city excise taxes. Therefore, the trial court correctly dismissed appellant's claim against Middletown Management.
 {¶ 22} The second sub-issue is that appellant's claims against Middletown Management are based on the OCSPA rather than any "tax" laws. Appellant argues that the purpose of the OCSPA is to protect consumers against unfair, deceptive and unconscionable acts. As such, the OCSPA applies to her claim because collecting additional charges from consumers in the form of nonexistent taxes is a deceptive and unconscionable act which was allegedly perpetrated by Middletown Management.
 {¶ 23} "The [O]CSPA is a remedial statute designed to compensate for traditional consumer remedies." Burdge v. Kerasotes Showplace Theatres,L.L.C., Butler App. No. CA2006-02-023, 2006-Ohio-4560, ¶ 39. The OCSPA prohibits acts or practices by suppliers in consumer transactions which are "unfair or deceptive" and/or "unconscionable." Einhorn v. Ford MotorCo. (1990), 48 Ohio St.3d 27, 29, citing R.C. 1345.02 and 1345.03.
 {¶ 24} Here again, we feel compelled to follow the logic suggested by the district court in Bergmoser when it dismissed the plaintiffs' OCSPA claim. In particular, the court stated, "if defendant wrongfully assessed and collected sales tax, plaintiffs' proper remedy is to file an application with the tax commissioner." Bergmoser, 2007 WL 634674 at *3. While overcharging a customer for a product or service in a consumer transaction would in most circumstances be violative of the OCSPA, we believe that the county and city tax charge alleged by appellant to be unfair, deceptive and unconscionable falls outside the scope of the OCSPA precisely because it was invoiced as a tax.
 {¶ 25} We also observe, as did the Findlay court, that appellant's complaint is also defective, as a purported class action, because she failed to plead the requirements of a *Page 10 
class action pursuant to R.C. 1345.09(B). Findlay, 441 F.Supp.2d at 863. "Under R.C. 1345.09(B), a class action is permitted under the Act if the plaintiff alleges that the substantive provisions of the Act have been violated, and (1) a specific rule or regulation has been promulgated under R.C. 1345.05 that specifically characterizes the challenged practice as unfair or deceptive, or (2) an Ohio state court has found the specific practice either unconscionable or deceptive in a decision open to public inspection." Johnson v. Microsoft Corp.,155 Ohio App.3d 626, 2003-Ohio-7153, ¶ 21.
 {¶ 26} Therefore, because appellant's claim falls outside the scope of the OCSPA, and because appellant failed to specifically plead a class action pursuant to the requirements of R.C. 1345.09(B), appellant's OCSPA claims were properly dismissed by the trial court.
 {¶ 27} In her third sub-issue, appellant argues that her fraud claim was pled with sufficient particularity to survive dismissal. Appellant also argues that the trial court erred in requiring documentation of her stay as part of her fraud pleading thereby deviating from a Civ. R. 12(B)(6) standard of review.
 {¶ 28} While Civ. R. 9(B) requires that the circumstances constituting fraud be pled with particularity, we need not determine whether appellant properly pled her claim for fraud as we have already established that appellant's proper remedy, for any collection of improper taxes, is filing an application for a refund from the taxing entity. See, e.g., Bergmoser, 2007 WL 634674. Thus, appellant cannot file an action in fraud against Middletown Management for the allegedly improper collection of county and city excise taxes.
 {¶ 29} In conclusion, for the reasons stated above, the trial court properly dismissed appellant's claims against Middletown Management, because appellant's sole cause of action and remedy is to obtain a refund from the taxing entity. Appellant's assignment of error is hereby overruled.
 {¶ 30} Judgment affirmed. *Page 11 
WALSH and RINGLAND, JJ., concur.
[1] {¶ a} The maximum charges are based on appellant's contention that only the state of Ohio charged taxes on hotel stays in Fairfield, Ohio in the amount of 5.5 percent from 1999 to September 30, 2003. Pursuant to Butler County Board of Commissioners Resolutions 03-8-1314 (Aug. 11, 2003) and 03-9-1542 (Sept. 18, 2003), as of October 1, 2003, Butler County began assessing a lodging excise tax of three percent, changing the maximum amount taxable to a hotel guest to 8.5 percent.
{¶ b} Although the 12 percent amounts charged were purportedly for state, county, and local taxes, Butler County only began exacting a three percent hotel excise tax on October 1, 2003 and the city of Fairfield, Ohio has only just added a transient lodging tax of three percent by passing Chapter 187 of Fairfield's Codified Ordinances on April 9, 2007.
[2] Prior to filing this motion to dismiss, Middletown Management filed a Civ. R. 12(B)(1) motion claiming the trial court did not have subject matter jurisdiction. This motion was withdrawn and appellant was given an extension to file an amended complaint.
[3] This argument is essentially in appellant's second assignment of error, and as such, we will address it in that portion of the opinion.
[4] The Findlay court also dismissed the city's OCSPA claim however this was because the court found Findlay lacked standing to bring the claim, and failed to plead the two prerequisites to a class action under the OCSPA in R.C. 1345.09(B). Findlay, 441 F.Supp.2d at 862-63.
[5] This does not preclude Butler County or Fairfield from joining Middletown Management as a party to any suit to reclaim monies collected erroneously. Parker at ¶ 30 (finding that "[i]t would be up to the State of Ohio to determine whether [Giant] should be joined as a party to the suit.) *Page 1