JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Jeno Kiraly ("Kiraly") appeals the trial court's decision granting summary judgment in favor of Office Max North America, Inc. ("Office Max"). Kiraly assigns the following error for our review:
 "I. The trial court erred in granting summary judgment when genuine issues of material fact existed as to appellant's claims."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} In July 1997, Office Max hired Kiraly as a Desktop Publisher in the Copy Max center of their North Olmsted, Ohio store. In February 2001, Kiraly, of Hungarian descent, filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against Office Max alleging that he was a victim of national origin discrimination. In the charge, Kiraly specifically alleged that he was called a "foreigner," that he found pornographic literature on his desk and work area, and that he was harassed by his manager and co-workers.
 {¶ 4} On June 11, 2001, the EEOC mailed Kiraly a determination that it was unable to conclude that any violations of the discrimination statutes had occurred. The letter included a "notice of suit rights" that told him that he had ninety days from the receipt of the letter in which to file a lawsuit; otherwise, his right to sue based on the charge would be lost. Kiraly took no further actions on the charges.
 {¶ 5} Kiraly's employment with Office Max ended on February 22, 2006, following successive days of "no call, no show" absences. On April 11, 2006, Kiraly *Page 4 
filed a complaint against Office Max asserting claims for national origin discrimination, wrongful discharge, intentional infliction of emotional distress, and breach of contract. Office Max filed a motion for summary judgment, [1] but on October 18, 2006, before the trial court ruled on the motion, Kiraly voluntarily dismissed his complaint.
 {¶ 6} On October 12, 2007, Kiraly re-filed his complaint asserting identical claims to the previously dismissed complaint. On February 14, 2008, Office Max filed a motion for summary judgment, which the trial court granted.
 Summary Judgment {¶ 7} In the sole assigned error, Kiraly argues the trial court erred when it granted summary judgment in favor of Office Max. We disagree.
 {¶ 8} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ. R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing *Page 5 
the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[4]
 {¶ 9} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 National Origin Discrimination {¶ 10} R.C. 4112.02 provides, in relevant part:
 "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. ***" *Page 6 
 {¶ 11} Pursuant to Mauzy v. Kelly Services, Inc., [7] Ohio courts may rely on federal anti-discrimination case law when interpreting and deciding claims brought under R.C. 4112.02 and 4112.14.
 {¶ 12} Under both federal and Ohio standards, a plaintiff may establish a prima facie case of discrimination through either direct or indirect evidence. Absent direct evidence, indirect evidence may be used to raise an inference of direct and circumstanced discriminatory intent where a plaintiff establishes that he: 1) was a member of a statutorily protected class; 2) was subject to adverse employment action; 3) was qualified for the position; and 4) that comparable, non-protected persons were treated more favorably than plaintiff.[8]
 {¶ 13} Once a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the employer to rebut the presumption of discrimination by articulating some legitimate, nondiscriminatory reason for its adverse action. Then, assuming the employer presents such reasons, the burden shifts back to plaintiff to show that the purported reasons were a pretext for invidious discrimination. To succeed in sustaining the ultimate burden of proving intentional discrimination, a plaintiff may establish a pretext either directly, by showing that the *Page 7 
employer was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered reason is unworthy of credence.[9]
 {¶ 14} In granting Office Max's motion for summary judgment, the trial court made the following findings, stated in pertinent part as follows:
 "Plaintiff has filed an action under Chapter 4112 of the Ohio Revised Code which relates to a hostile work environment and discrimination based on national origin. The activities that Plaintiff has alleged relate to alleged actions of the Defendant between 1997-1999. These matters were addres-sed with the charge presented by the E.E.O.C. and heard in 2001, and dismissed. Inasmuch as there is a six-year statute of limitations regarding national origin discrimination claims set forth in the complaint, the Plaintiff's complaints for discrimination are time-barred. The Court grants summary judgment on the Ohio Revised Code 4112 claims.
 The Plaintiff has also filed a count in his complaint stating that he was subjected to severe or pervasive harassment. In reviewing all the *Page 8 pleadings and keeping in mind the holdings of the United States Supreme Court in Faragher v. City of Boca Raton (1998), 524 U.S. 775, 778, the Court finds that the comments alleged are not extremely serious or outrageous behavior and therefore the Court grants summary judgment for the Defendant on Plaintiff's complaint for intentional infliction of emotional distress. Those claims are also time-barred inasmuch as they relate to comments which predated Plaintiff's complaint by more than two years.
 Finally, the Court cannot agree with the Plaintiff's argument that he pursued a breach of contract claim based on an employee handbook. The law is clear that a disclaimer within an employee handbook stating that employment is at will precludes the finding of an employment contract.
 In August 1997, by signing Office Max's "Receipt of Handbook and Employment at Will" form the Plaintiff acknowledged his status as an at will employee. Therefore, his breach of contract claim also fails."[10]
 {¶ 15} Nonetheless, Kiraly argues his national origin discrimination claim should have survived summary judgment. We are not persuaded. *Page 9 
 {¶ 16} Kiraly filed his complaint for national origin discrimination on April 11, 2006, and alleged that he was the subject of discrimination and harassment because his co-workers referred to him as "foreigner," "gay," "thief," "gypsy," and "psycho." In addition, Kiraly alleged that pornographic pictures were placed in his work station, along with a picture of Adolph Hitler.[11]
 {¶ 17} The trial court found, and our review of the record confirms, that Kiraly raised the same factual allegations to support a charge of national origin discrimination filed with the EEOC in February 2001. Kiraly's 2001 EEOC filing reads in pertinent part as follows:
 "*** During my employment, I have been harassed and subjected to name calling, hostile work environment and treated different because of my national origin. I have been called a foreigner and other names. I have found pornographic literature on my desk and in my work area.***"[12]
 {¶ 18} During the investigation attendant to the EEOC filing, Kiraly specifically alleged that Sharon Hrusovsky, a former store manager, harassed him and created a hostile work environment. Kiraly also alleged that other store associates, whom he declined to name, made fun of him. Most importantly, Kiraly alleged that the above events took place between the time he was hired on July 7, 1997 and January 3, 2000, when Hrusovsky was transferred to another store. *Page 10 
 {¶ 19} It is well established that claims brought under R.C. 4112 are subject to the six-year statute of limitations set forth in R.C. 2305.07.[13] Since Kiraly filed the instant action on April 11, 2006, he must have alleged that an actionable event occurred after April 11, 2000, in order to present a viable claim under R.C. 4112.
 {¶ 20} Here, Kiraly specifically alleged that the events which formed the basis of his complaint took place between his hire date of July 7, 1997 and Hrusovsky's departure from the store in January 2000. This is well over six years prior to the time Kiraly filed his complaint. Thus, this claim falls outside the statute of limitations. Consequently, the trial court did not err in granting summary judgment on this claim in favor of Office Max.
 {¶ 21} Moreover, the record indicates that Kiraly's employment ended after he failed to report for work and failed to call for five successive days beginning on January 13, 2006, which led Office Max to conclude that Kiraly had abandoned the job.
 {¶ 22} The record contains a sworn affidavit of Robert Schaefer, the Print and Document Manager of the store location where Kiraly worked. In December 2003, Office Max instituted a company-wide policy requiring the use of wireless radios by all store employees. Kiraly signed an updated "CopyMax Desktop Publisher Job *Page 11 
Description" acknowledging his obligation to participate in the use of the wireless radios.
 {¶ 23} On January 6, 2006, Schaefer noticed that Kiraly was not wearing his wireless radio headset. Upon inquiring why Kiraly was not wearing the headset, Kiraly responded that he would not wear it. Schaefer did not press the issue at that time, but on January 10, 2006, he again noticed that Kiraly was not wearing his wireless radio headset. Schaefer asked Kiraly if he would wear the headset and Kiraly flatly refused.
 {¶ 24} Schaefer contacted Deborah Krejci of Human Resources about Kiraly's refusal to wear the headset. Krejci instructed Schaefer to inform Kiraly that he needed to wear the headset or go home for the day and think about whether he would wear it in the future. When Schaefer informed Kiraly about Krejci's directives, Kiraly indicated he understood and left the store.
 {¶ 25} Schaefer averred that Kiraly called the store the following day to indicate that he would not report that day. On January 12, 2006, Kiraly reported to work, but refused to wear the headset and refused to give an explanation. Schaefer instructed Kiraly to punch out on the time clock and leave for the day.
 {¶ 26} Kiraly responded by calling the North Olmsted police department, who dispatched an officer to the store. The officer spoke with Kiraly and then with Schaefer. The officer informed Schaefer that Kiraly had indicated that Schaefer was *Page 12 
harassing him. Schaefer informed the officer that he was only trying to get Kiraly to comply with the company's policy. Kiraly then left the store.
 {¶ 27} Schaefer finally averred that Kiraly was a "no-call, no-show" the following day and was a "no-call, no-show" for his scheduled shifts on January 14, 17, 18, and 19, 2006.
 {¶ 28} The record also contains a sworn affidavit of Krejci, that on January 13, 2006, after Kiraly failed to report to work and failed to call, she telephoned him. Krejci averred that Kiraly indicated that he was in bad health and began to cry. Krejci asked if there was anything occurring at the store that was making him upset, but Kiraly refused to cooperate and hung up the phone. Krejci called back, but Kiraly refused to provide any specific information, and when she asked about the wireless headset, Kiraly hung up the phone.
 {¶ 29} On January 24, 2006, after Kiraly had failed to report to work for his scheduled shifts on January 14, 17, 18, and 19, 2006, Krejci sent correspondence to Kiraly informing him that if his absences were related to a medical condition, he needed to provide documentation to support and excuse the absences. In the correspondence, Krejci informed Kiraly that he needed to provide the documentation by January 30, 2006.
 {¶ 30} After the January 30, 2006 deadline passed, Krejci sent Kiraly another letter requesting medical documentation to support his absences. In the correspondence, Krejci also indicated that Office Max had decided to extend the *Page 13 
deadline to February 10, 2006, but if he failed provide the requested documentation, the company would conclude that Kiraly had abandoned his job.
 {¶ 31} On February 10, 2006, Krejci received a facsimile from Kiraly's attorney, who indicated that he had been retained relative to Kiraly's employment with Office Max. Kiraly's attorney also indicated that Kiraly was off work pursuant to medical leave, but did not provide any documentation to support his client's absences.
 {¶ 32} On February 16, 2006, Office Max's legal department sent correspondence to Kiraly's attorney indicating that the company had not received any medical documentation to support his absences. In the correspondence, Office Max indicated that the company would extend the deadline to February 21, 2006, for Kiraly to provide the medical documentation.
 {¶ 33} Krejci averred that by February 21, 2006, neither Kiraly nor his attorney had provided medical documentation to support the absences. As a result, Office Max's legal department sent the following correspondence, addressed to Kiraly's attorney, which reads in pertinent part as follows:
 "On February 16, 2006 I forwarded a letter to you requesting receipt by February 21, 2006 of the information that was previously requested from your client.
 I did not receive any response to my letter. Mr. Kiraly has now had three deadlines for submitting the requested information and to date nothing at all has been received. Based upon the lack of response from both you and your client, we will assume that Mr. *Page 14 Kiraly abandoned his position with Office Max effective as of January 30, 2006."[14]
 {¶ 34} After reviewing the above correspondence and the record as a whole, we find nothing to refute Office Max's conclusion that Kiraly had abandoned his position with the company. The record indicates that it is standard practice for Office Max's store associates to wear the wireless headset while working. The record also contains Kiraly's signed acknowledgment of this practice.
 {¶ 35} The record further indicates that after Kiraly's refusal to wear the headset and his subsequent absences, the company gave him three extensions to produce medical documentation to excuse these absences. Finally, the record indicates that despite the three extensions, neither Kiraly nor his attorney produced the requested documentation.
 {¶ 36} The record fails to establish that Kiraly's employment with Office Max ended because of national origin discrimination. As such, the trial court properly granted summary judgment in favor of Office Max.
 {¶ 37} Nonetheless, Kiraly argues that Office Max breached what amounted to an employment contract because the company told him that he could expect to be employed there "a long time." We are not persuaded.
 {¶ 38} It is a fundamental tenet of Ohio employment law that, in the absence of facts and circumstances which indicate that the agreement is for a specific term, an *Page 15 
employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at-will by either party.[15]
 {¶ 39} The employment-at-will doctrine holds that when a contract of employment does not mention the duration of employment, employment is considered to be at-will and terminable by either party for any reason or for no reason.[16] The doctrine further holds that the discharge of an "at-will" employee without cause does not constitute a breach of contract nor does it permit the recovery of damages by the discharged employee.[17]
 {¶ 40} Further, absent fraud in the inducement, such a disclaimer stating that employment is at-will, precludes an employment contract based upon the terms of the employee handbook.[18]
 {¶ 41} In the instant case, the record indicates that at the commencement of Kiraly's employment with Office Max, he signed a disclaimer acknowledging his status *Page 16 
as an at-will employee. The disclaimer, dated August 8, 1997, reads in pertinent part as follows:
 "***I understand that neither this handbook nor any other written or verbal communication by management representative of Office Max is intended to create a contract of employment. I understand that my employment can be terminated by Office Max or me, at any time, with or without cause."[19]
 {¶ 42} By acknowledging his status as an at-will employee, Kiraly is precluded from successfully arguing that an implied contractual relationship existed between him and Office Max. As such, the trial court properly granted summary judgment in favor of Office Max on Kiraly's breach of contract claim.
 {¶ 43} In conclusion, the trial court correctly granted summary judgment to Office Max, as there existed no genuine issues of material fact for any of the claims Kiraly has advanced. As such, Office Max was entitled to judgment as a matter of law. Accordingly, we overrule the sole assigned error.
Judgment affirmed.
It is ordered that appellee recover from appellant his costs herein taxed. The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 17 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and CHRISTINE T. MCMONAGLE, J., CONCUR.
[1] Although Kiraly references a brief in opposition in his appellate brief, it does not appear on either the trial court's docket or in our record.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] 75 Ohio St.3d 578, 582, 1996-Ohio-265.
[8] McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792,36 L.Ed.2d 668, 93 S.Ct. 1817; Kohmescher v. Kroger Co. (1991),61 Ohio St.3d 501.
[9] Sarach-Kozlowska v. Univ. of Cincinnati College of Med., Ct. of Cl. Case No. 2001-07505, 2004-Ohio-1926, citing Fragante v. City Cty.of Honolulu (C.A. 9, 1989), 888 F.2d 591, 595, citing Texas Dept. ofCommunity Affairs v. Burdine (1981), 450 U.S. 248, 253, 67 L.Ed.2d 207,101 S.Ct. 1089.
[10] Journal Entry, March 28, 2008.
[11] Complaint ¶ 6.
[12] Charge of Discrimination.
[13] Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless,113 Ohio St.3d 394, 2007-Ohio-2203, citing Cosgrove v. Williamsburg of CincinnatiManagement Co., 70 Ohio St.3d 281, 1994-Ohio-295.
[14] Exhibit 8, Defendant's Motion for Summary Judgment.
[15] McCary v. Akron Turners Club, Inc., 9th Dist. No. 23477, 2007-Ohio-2197; Henkel v. Educational Research Council ofAmerica (1976), 45 Ohio St.2d 249, syllabus.
[16] Gill v. Monetary Mgmt. Corp. (Sept. 19, 1996), Cuyahoga App. No. 69949, citing Peters v. Mansfield Screw Mach. Products Co. (1991),73 Ohio App.3d 197, 200; Phung v. Waste Management, Inc. (1988),40 Ohio App.3d 130, 134.
[17] Henkel, supra.
[18] Whistler v. W. Reserve Care Servs., 7th Dist. No. 00 C.A. 90, 2001-Ohio-3498; Wing v. Anchor Media, Ltd. Of Texas (1991),59 Ohio St.3d 108, 110.
[19] Receipt of Handbook and Employment at Will Form. *Page 1